## Caldor, Inc. *v.* Mary M. Heslin, Commissioner of Consumer Protection, et al.
### (13754)

Peters, C. J., Callahan, Glass, Covello and Hull, Js.

Argued April 12—decision released July 10, 1990

*Eliot B. Gersten,* with whom was *Peter H. Lovell,* for the appellant (plaintiff).

*Stephen R. Park,* assistant attorney general, with whom were *John M. Looney,* assistant attorney general, and, on the brief, *Clarine Nardi Riddle,* attorney general, and *Robert M. Langer,* assistant attorney general, for the appellees (defendants).

HULL, J. This appeal involves a challenge to a regulation promulgated by the named defendant, the commissioner of the department of consumer protection,[1] that established as unfair or deceptive certain acts or practices in the advertising of manufacturers' rebates. The plaintiff, Caldor, Inc., instituted the present action seeking a permanent injunction staying the effectiveness and enforcement of the regulation. The case was tried to the court and judgment was rendered for the defendants. From this judgment the plaintiff appealed to the Appellate Court. We subsequently transferred the case to ourselves pursuant to Practice Book § 4023. We affirm the judgment of the trial court.

The trial court's memorandum of decision reveals the following facts. The Connecticut Unfair Trade Practices Act (CUTPA) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). The legislature did not codify a comprehensive list of "unfair or deceptive acts or practices," but rather articulated its intent that, in construing the scope of the statutory prohibition, "the [named defendant] and the courts . . . shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. 45 (a) (1)) [prohibiting

---

[1] The Connecticut department of consumer protection is also named as a defendant in this appeal.

'unfair or deceptive acts or practices'], as from time to time amended." General Statutes § 42-110b (b). The legislature delegated to the named defendant the authority to "establish by regulation acts, practices or methods which shall be deemed to be unfair or deceptive in violation of [CUTPA]." General Statutes § 42-110b (c). The named defendant's authority is limited, however, by the statutory requirement that her regulations "shall not be inconsistent with the rules, regulations and decisions of the federal trade commission and the federal courts in interpreting the provisions of the Federal Trade Commission Act." General Statutes § 42-110b (c).

Pursuant to § 42-110b (c), the named defendant promulgated § 42-110b-19 of the Regulations of Connecticut State Agencies, that provides in pertinent part: "It shall be an unfair or deceptive act or practice to . . . (e) Advertise the availability of a manufacturer's rebate by displaying the net price of the advertised item in the advertisement, unless the amount of the manufacturer's rebate is provided to the consumer by the retailer at the time of purchase of the advertised item. A retailer will not be required to provide the purchaser of an advertised item with the amount of the manufacturer's rebate if the retailer advertises that a manufacturer's rebate is available without stating the net price of the item. For the purpose of this subsection, 'net price' means the ultimate price paid by a consumer after he redeems the manufacturer's rebate offered for the advertised item."

The plaintiff, a New York corporation engaged in the business of retail sales in Connecticut, instituted the present action, seeking a "permanent injunction staying the effectiveness of [Regulation § 42-110b-19 (e)] and its enforcement." At trial, the plaintiff argued that

the regulation is: (1) inconsistent with, and in excess of, the statutory authority granted to the named defendant; (2) in violation of substantive due process in that it is arbitrary and capricious; and (3) inconsistent with the protections that are afforded commercial speech pursuant to the federal and state constitutions.

In addressing these claims, the trial court made the following findings of fact with respect to manufacturers' rebate programs. Such a program is a marketing technique that purports to return a portion of the purchase price to the consumer after purchase. The terms and conditions of a manufacturer's rebate, including the amount of the rebate, are determined by the manufacturer. While the terms and conditions vary from manufacturer to manufacturer and from product to product, three basic conditions are common to each manufacturer's rebate program. In order to obtain the rebate from the manufacturer, the consumer must deliver to a designated address: (1) a completed rebate certificate; (2) the original cash register receipt; and (3) a valid proof of purchase. The rebate certificate and the cash register receipt are obtained from the retailer and the valid proof of purchase is typically part of the package or container purchased by the consumer.

The language of the advertisement of a product for which a manufacturer's rebate is offered is determined by the retailer. An important marketing tool used by retailers is the prominent advertisement of a product's net price, i.e., the price of the product after subtracting the rebate allowance. Such net price advertising quickly "grabs" the attention of the consumer. Advertisements by the plaintiff of products included in a manufacturer's rebate program display, in large type, the net price and, in small type, the regular price, the sale price and the amount of the manufacturer's rebate.

The following is an example of the plaintiff's net price advertising:

$1 after 50¢ mfr. rebate*
reg. 2.99 sale 1.50

reg. 2.99 ea. sale
3/6.25 less 1.25 mfr. reb. *3/$5

*See clerk for details/limitations on all rebates & special offers.

The trial court noted that such advertising is factually untrue because the consumer necessarily incurs costs in obtaining the rebate from the manufacturer. At the very least, the consumer must incur the expense of mailing the required items to the address designated by the manufacturer. In the advertisement reproduced above, therefore, the consumer pays, at the time of purchase, $1.50 for the advertised product and then incurs the cost of obtaining the 50 cent rebate. The trial court determined that the net price advertising is likely to mislead a consumer into believing that the price of the product is $1, a belief likely to affect the consumer's purchase decision.

The trial court concluded, therefore, that the plaintiff's net price advertising of a product included in a manufacturer's rebate program is "deceptive" as a matter of law. Accordingly, the court held that: (1) in promulgating the regulation at issue, the named defendant acted within the authority granted her by General Statutes § 42-110b (c); and (2) the advertising here at issue was not protected by the federal and state constitutions.

The plaintiff's appeal to this court raises three issues. First, the plaintiff contends that because its net price advertising of products included in a manufacturer's rebate program is not "deceptive" as a matter of law, the trial court improperly sustained the regulation. Second, the plaintiff claims that the trial court mistakenly

determined that such net price advertising is not subject to constitutional protection. Finally, the plaintiff maintains that the trial court improperly refused to admit at trial certain evidence relevant to a determination of the statutory and constitutional validity of the regulation. We are unpersuaded.

## I

We turn first to the plaintiff's claim that the challenged regulation is inconsistent with the statutory authority granted to the named defendant and, therefore, was improperly sustained by the trial court. The trial court determined that the plaintiff's net price advertising was "deceptive" as a matter of law. This finding served as the basis for the court's conclusion that, in promulgating the regulation, the named defendant acted within the authority granted her by § 42-110b (c). The plaintiff claims that a proper application of the standards set forth by the federal trade commission compels a finding that its advertising is not "deceptive." Accordingly, argues the plaintiff, the regulation of its advertisements pursuant to § 42-110b is invalid. We conclude that the trial court properly sustained the regulation; we rely on different grounds than did the trial court, however, in reaching this conclusion.[2]

Initially, we note that the nature of the plaintiff's advertising is not the focus of our inquiry, nor should it have been in the trial court. At issue in this appeal is the validity of the regulation promulgated by the named defendant. " 'Judicial review of the [named defendant's] action is governed by the Uniform Admin-

[2] This court may rely upon different grounds from those relied upon by the trial court for the purpose of affirming the judgment. *Rubin* v. *Rubin*, 204 Conn. 224, 232, 527 A.2d 1184 (1987); *Pepe* v. *New Britain*, 203 Conn. 281, 292, 524 A.2d 629 (1987); *Heffernan* v. *New Britain Bank & Trust Co.*, 175 Conn. 8, 14, 392 A.2d 481 (1978).

istrative Procedure Act (General Statutes, c. 54, §§ 4-166 through 4-189), and the scope of that review is very restricted. *Lawrence* v. *Kozlowski,* 171 Conn. 705, [707–708,] 372 A.2d 110 (1976) [cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977)]. Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [named] defendant.' *C & H Enterprises, Inc.* v. *Commissioner of Motor Vehicles,* 176 Conn. 11, 12, 404 A.2d 864 (1978); *DiBenedetto* v. *Commissioner of Motor Vehicles,* 168 Conn. 587, 589, 362 A.2d 840 (1975); see General Statutes § 4-183 [j].[3] 'The court's ultimate duty is only to decide whether, in light of the evidence, the [named defendant] has acted unreasonably, arbitrarily, illegally, or in abuse of [her] discretion.' *Burnham* v. *Administrator,* 184 Conn. 317, 322, 439 A.2d 1008 (1981); *Riley* v. *State Employees' Retirement Commission,* 178 Conn. 438, 441, 423 A.2d 87 (1979); see also *Persico* v. *Maher,* 191 Conn. 384, 409, 465 A.2d 308 (1983)." *Buckley* v. *Muzio,* 200 Conn. 1, 3, 509 A.2d 489 (1986); *New Haven* v. *Freedom of Information Commission,* 205 Conn. 767, 773, 535 A.2d 1297 (1988); see also *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986). It is with an awareness of these limitations that we review the challenged regulation.

---

[3] General Statutes § 4-183 (j) as amended to take effect July 1, 1989, provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person.appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ."

Since the early 1980s the state department of consumer protection has received consumer complaints about manufacturers' rebate programs. In response to these complaints, the named defendant conducted an investigation of these rebate programs. The trial court's findings, discussed supra, detailed the relevant findings made during this investigation. The ultimate conclusion reached by the named defendant and affirmed by the trial court was that net price advertising of a product for which a manufacturer's rebate is offered misleads the consumer about the price the consumer will pay for that product.

The federal courts have determined that an act or practice is deceptive[4] if three requirements are met. "First, there must be a representation, omission, or other practice likely to mislead consumers. Second, the consumers must interpret the message reasonably under the circumstances. Third, the misleading representation, omission, or practice must be material—that is, likely to affect consumer decisions or conduct." *Figgie International, Inc.,* 107 F.T.C. 313, 374 (1986). Given the findings concerning the inherently misleading nature of net price advertising where a manufacturer's rebate is involved, the named defendant, pursuant to § 42-110b (c), established by regulation that such advertising is in violation of CUTPA.

We conclude that in light of the evidence the regulation is consistent with the general statutory scheme that it is designed to implement. The limitations imposed on the named defendant's authority by the express language of § 42-110b do not require a contrary conclusion. First, in accordance with the mandate of § 42-110b (c), the regulation is not "inconsistent with the rules, regulations and decisions of the federal trade

---

[4] The parties focus solely on "deception" rather than "unfairness."

commission and the federal courts in interpreting the provisions of the Federal Trade Commission Act." Although the federal authorities have not established the net price advertising here at issue to be "unfair or deceptive," they have also not adopted rules, regulations or decisions with which the challenged regulation is inconsistent.[5] Likewise, although § 42-110b (b) provides that courts and the named defendant shall be *guided by* the federal interpretations given § 5 of the Federal Trade Commission Act, they are not limited by such interpretations. "As originally enacted, [CUTPA] provided that state unfair or deceptive acts or practices were to be those *'determined to be'* unfair or deceptive by the [Federal Trade Commission] or the federal courts. 1973 Pub. Acts 615, § 2 (a). However, the Act was amended in 1976 to provide only that courts in Connecticut [and the named defendant] were to be *'guided by'* federal interpretations of § 5 of the [Federal Trade Commission Act]. The purpose of the change apparently was to permit . . . practices which had not yet been specifically declared unlawful by federal authorities to be nevertheless unlawful under CUTPA." (Emphasis added.) *Bailey Employment System, Inc.* v. *Hahn,* 545 F. Sup. 62, 71 (D. Conn. 1982).

Further support for the conclusion that the regulation is consistent with the named defendant's statutory authority derives from the fact that the regulation has received approval from the standing legislative regulation review committee as required by General Statutes § 4-170. Section § 4-170 provides in part that "[n]o adoption, amendment or repeal of any regulation . . .

[5] The plaintiff claims that a letter received by the named defendant in 1986 from a Federal Trade Commission staff employee is inconsistent with the challenged regulation. We find no such inconsistency. The letter merely declines to undertake a study or to make reports or policy statements regarding rebates. By this action, the Federal Trade Commission did not commence the most basic steps that could lead to the issuance of a rule, regulation or decision.

shall be effective until the original of the proposed regulation approved by the attorney general, as provided in section 4-169 . . . [has] been submitted to the standing legislative regulation review committee . . . . The committee shall review all proposed regulations and, in its discretion . . . may approve [or] disapprove . . . any such regulation." "[L]egislative ratification of a proposed regulation supports the position that the regulation is consistent with the general statutory scheme that the regulation was designed to implement." *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 600, 522 A.2d 771 (1987); see also *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 129–30, 527 A.2d 672 (1987); *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 144, 509 A.2d 1050 (1986).

The named defendant, therefore, acted within her statutory grant of authority in establishing net price advertising in the context of a manufacturer's rebate program as "unfair or deceptive" in violation of CUTPA. That the named defendant did not eliminate the practice of net price advertising entirely, but rather chose to regulate the area more narrowly, does not render the regulation invalid. "The Commission is the expert body to determine what remedy is necessary to eliminate the unfair or deceptive trade practices which have been disclosed. It has wide latitude for judgment and the courts will not interfere except where the remedy selected has no reasonable relation to the unlawful practices found to exist." *Jacob Siegel Co.* v. *Federal Trade Commission,* 327 U.S. 608, 612–13, 66 S. Ct. 758, 90 L. Ed. 888 (1946). The named defendant, relying on her expertise in the area, determined that an effective way to address the inherently misleading nature of net price advertising in the context of manufacturers' rebate programs is to require those retailers who

choose to use that type of advertising to make the rebate available at the time of purchase. We may not substitute our own judgment for that of the named defendant.

We conclude that, in promulgating § 42-110b-19 (e) of the regulations, the named defendant did not act unreasonably, arbitrarily, illegally, or in abuse of her discretion. The trial court, therefore, properly determined that the adoption of the regulation was consistent with General Statutes § 42-110b.

## II

We turn next to the plaintiff's claim that the regulation violates its right to free speech under the first amendment to the United States constitution and article first, §§ 4 and 5 of the Connecticut constitution. As both the plaintiff and the defendants concede, the net price advertising here at issue falls within the classification of "commercial speech."[6] "The United States Supreme Court has 'adopted a four-part test for determining the validity of government restrictions on commercial speech . . . . (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and *is not misleading*. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.' *Metromedia, Inc.* v. *San Diego,* [453 U.S. 490, 507, 101 S. Ct. 2882, 69 L. Ed. 2d 800 (1981)]." (Emphasis added.) *Burns* v. *Barrett,* 212 Conn. 176, 182, 561 A.2d 1378, cert. denied, 493 U.S. 1003, 110 S. Ct. 563, 107 L. Ed. 2d 558 (1989).

[6] In determining the protection afforded commercial speech by the state constitution, we are guided by the United States Supreme Court's decisions in this area. *Grievance Committee* v. *Trantolo,* 192 Conn. 15, 23, 470 A.2d 228 (1984).

We need not go beyond the first of these criteria. As we discussed previously, the named defendant's investigation yielded a finding that net price advertising of a product for which a manufacturer's rebate is offered is inherently misleading. As such, the plaintiff's advertising does not qualify for constitutional protection.

## III

Finally, the plaintiff challenges the trial court's refusal to admit into evidence examples of other retailers' net price rebate advertising. In offering the evidence, the plaintiff stated that the evidence was relevant to the issue of "deception" as set forth in its statutory challenge to the regulation and the issue of overbreadth as set forth in its constitutional challenge to the regulation. The court rejected the offer, stating that the form and substance of an advertisement of a competitor of the plaintiff was irrelevant to the controversy. The plaintiff claims that the court improperly focused only on the plaintiff's advertising. We do not agree.

"It is beyond dispute that the trial court has broad discretion in determining the relevancy and materiality of evidence. *Hardisty* v. *Hardisty,* 183 Conn. 253, 257, 439 A.2d 307 (1981)." *Web Press Services Corporation* v. *New London Motors, Inc.,* 203 Conn. 342, 355, 525 A.2d 57 (1987). The plaintiff first offered the examples of other retailers' advertising on the issue of "deception." As discussed previously, the question properly before the trial court was not whether a particular advertisement was deceptive as a matter of law, but rather, whether the named defendant's regulation was unreasonable, arbitrary, illegal, or in abuse of her discretion. The plaintiff also offered the evidence on its claim that the regulation was unconstitutionally overbroad. The United States Supreme Court has been reluctant, however, to apply the overbreadth analysis

in the context of commercial speech. See *Bates* v. *State Bar of Arizona*, 433 U.S. 350, 379–81, 97 S. Ct. 2691, 53 L. Ed. 2d 810, reh. denied, 434 U.S. 881, 98 S. Ct. 242, 54 L. Ed. 2d 164 (1977). We conclude that the trial court did not abuse its broad discretion in precluding at trial examples of other retailers' net price rebate advertising.

The judgment is affirmed.

In this opinion PETERS, C. J., CALLAHAN and GLASS, Js., concurred.

COVELLO, J., dissenting. I respectfully disagree with the majority's conclusion that "the advertising here at issue was not protected by the federal and state constitutions." This conclusion is based upon the trial court's factually unsupported determination that net price advertising, in the context of a manufacturer's rebate program, was inherently "unfair or deceptive," and that, therefore, pursuant to General Statutes § 42-110b (c), such advertising is in violation of the Connecticut Unfair Trade Practices Act (CUTPA). I submit that the defendants are required to make some showing of unfairness or deception beyond a mere conclusion, particularly when the first amendment guarantee of free speech is implicated.

Despite the implication to the contrary found in the majority's opinion, I submit that "[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Bolger* v. *Youngs Drug Products Corporation*, 463 U.S. 60, 71 n.20, 103 S. Ct. 2875, 77 L. Ed. 2d 469 (1983). Here, there was simply no evidence in the record at trial to show that the defendants had received any complaints suggesting that net price advertising was deceptive because the consumer expected to receive the advertised net price from the retailer at the point of purchase.

Michael Krauss, the plaintiff's director of consumer and government relations, testified that over the course of eight years he did not receive a single complaint regarding a consumer's inability to receive the rebate amount in the store, or the net price. Krauss' testimony was corroborated by Kathleen Curry, consumer affairs bureau chief for the defendants. Complaints from consumers about rebate offers related exclusively to the process involved in obtaining the rebate, *not the advertising of the rebate itself.* As a threshold matter, the evidence on the record is wholly insufficient to support the conclusion that there is a likelihood or a fair probability that a reasonable consumer would be misled or deceived by the net price advertising format at issue here. See *Figgie International, Inc.,* 107 F.T.C. 313, 373–74 (1986).

General Statutes § 42-110b (b) provides that the courts and the defendant shall be guided by the federal interpretations given § 5 of the Federal Trade Commission Act. Federal authorities have *not* established that the net price advertising here at issue is "unfair or deceptive," and the Federal Trade Commission (FTC) in the past has declined the named defendant's request that the FTC undertake a study, report or policy statement regarding rebates. The majority's statement, that "although § 42-110b (b) provides that courts and the named defendant shall be *guided by* the federal interpretations given § 5 of the Federal Trade Commission Act, they are not limited by such interpretations" (emphasis in original) is an inappropriate attempt to justify the conclusory, unsupported and therefore clearly erroneous determination of the trial court. *Season-All Industries, Inc.* v. *R. J. Grosso, Inc.,* 213 Conn. 486, 498, 569 A.2d 32 (1990).

This regulation unconstitutionally restricts the dissemination of what I perceive to be truthful commercial speech. " 'Even though "commercial" speech is

involved, [this kind of restriction] strikes at the heart of the First Amendment. This is because it is a covert attempt by the State to manipulate the choices of its citizens, not by persuasion or direct regulation, but by depriving the public of the information needed to make a free choice. . . . [T]he State's policy choices are insulated from the visibility and scrutiny that direct regulation would entail and the conduct of citizens is molded by the information that [the] government chooses to give them.' " *Posadas de Puerto Rico Associates* v. *Tourism Co. of Puerto Rico,* 478 U.S. 328, 351, 106 S. Ct. 2968, 92 L. Ed. 2d 266 (1986) (Brennan J., dissenting), quoting *Central Hudson Gas & Electric Corporation* v. *Public Service Commission,* 447 U.S. 557, 574–75, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980). "[N]o differences between commercial and other kinds of speech justify protecting commercial speech less extensively where, as here, the government seeks to manipulate private behavior by depriving citizens of truthful information concerning lawful activities." *Posadas de Puerto Rico Associates* v. *Tourism Co. of Puerto Rico,* supra.

Accordingly, I dissent.