[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by plaintiff Bozrah Board of Education (hereinafter "Bozrah") from a decision by an impartial hearing board of defendant State Board of Education (hereinafter "State Board") in which the State Board found that Bozrah is responsible for providing for educational accommodations for William G. (hereinafter "William"). The Norwich Board of Education (hereinafter "Norwich") and the Department of Youth Services (hereinafter "DCYS") are also defendants in this appeal.
I. Facts
The record of the State Board reveals the following facts. William was born on July 26, 1973, and lived with his parents in the city of Norwich until 1979. At that time, William's mother developed cancer and William was placed in the care of Loretta Gagnon (hereinafter "Gagnon")in the city of Norwich. Gagnon was paid by William's mother for William's care until the time of the mother's death in February, 1980.
After the mother's death, William's father continued this arrangement with Gagnon, but stopped paying for William's care after a short time. Thereafter Gagnon was able to receive CT Page 2931 some payments for William's care through the deceased mother's social security checks. Because of the withholding of the social security checks, the father threatened to take William back. In September 1983, Gagnon was licensed as a foster care parent by DCYS. At the same time, William was committed to the custody and guardianship of DCYS. William continued to reside with Gagnon and Gagnon received payments from DCYS as a foster care parent.
In 1987, William was designated a special education student under state and federal law. In February, 1988, William was placed outside of Gagnon's care by DCYS and has since then been relocated several times. At no time have the father's parental rights been terminated. William's father resided in the city of Norwich until June 6, 1989, when he was released from Backus Hospital and moved to Fitchville Home, a nursing home located in the town of Bozrah. On March 12, 1990, upon learning of the father's move to the town of Bozrah, Norwich refused to pay for William's further education and sought credit for funds expended since June, 1989. Norwich took this action claiming that William no longer had a nexus with the city of Norwich, but that William had a nexus with the town of Bozrah because of the father's residence in that town, thereby making Bozrah responsible for William's education.
On June 18, 1990, Bozrah refused to enroll William in its school system. Charles Harrington (hereinafter "Harrington") was appointed William's surrogate parent. As such, Harrington, on August 10, 1990, petitioned Bozrah for a residency hearing pursuant to Connecticut General Statutes Section 10-186. Harrington petitioned Norwich in the same manner on August 13, 1990. Both Bozrah and Norwich, at the request of Harrington, agreed to waive the local residency hearings and proceed directly to a hearing before the State Board.
On September 26, 1990, Harrington filed a petition with the State Board naming Bozrah as a respondent and Norwich as an additional respondent. The State Board determined that Bozrah was responsible for William's education. Bozrah appealed the State Board's decision to this court. Harrington is not a party to this appeal.
II. Aggrievement
The parties stipulated at the hearing before the court on this appeal that Bozrah is aggrieved and the court finds that the order of the State Board requiring Bozrah to pay the cost of William's education is sufficient to show a CT Page 2932 specific personal and legal interest in the subject matter of the decision on the part of Bozrah which was specifically and injuriously affected by the decision so as to establish aggrievement on the part of Bozrah. Zoning Board of Appeals v. Freedom Information Commission, 198 Conn. 498, 502 (1988).
III. Scope of Judicial Review
This court's review of the decision of the State Board "is governed by the UAPA [Uniform Administrative Procedure Act], which limits the scope of judicial review of administrative agency decisions." Miko v. Commission on Human Rights Opportunities, 220 Conn. 192, 200 (1991). The court may not retry the case or substitute its own judgment for that of the agency. Caldor, Inc. v. Heslin, 215 Conn. 590, 596
(1990); cert. denied, 111 Sup. Ct. 966 (1991). Determination of issues of fact by the administrative agency should be upheld if the record before the agency affords a substantial basis of fact from which the fact in issue may be reasonably inferred. Miko v. Commission on Human Rights Opportunities, supra at 200-1.
This court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. Caldor, Inc. v. Heslin, supra at 596. The legal conclusions reached by an agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. All Brand Importers, Inc. v. Department of Liquor Control, 213 Conn. 184, 192 (1989).
IV. Burden of Proof
In its decision the State Board placed the burden of proving William's ineligibility upon Bozrah and Norwich. In this appeal, Bozrah claims that the burden of proof should have been placed on Norwich, since Norwich had been paying for William's education and because Norwich was the first party to claim William's ineligibility based on residency. Bozrah also claims that the State Board erred in allocating the burden of proof, since in any residency controversy at least two local boards will be in dispute. Thus, Bozrah claims, the burden of proof should have been allocated to only one of the parties.
Connecticut General Statutes Section 10-186 (b)(1) provides in pertinent part:
 If any board of education denies such accommodations, the parent or guardian of CT Page 2933 any child who is denied schooling . . . may in writing, request a hearing by the board of education . . . The party claiming ineligibility for school accommodations shall have the burden of proving such ineligibility by a preponderance of the evidence.
Both Norwich and Bozrah denied William school accommodations. Harrington, William's surrogate parent, petitioned both Bozrah and Norwich for a local residency hearing, but the hearings were waived by both Bozrah and Norwich in order to proceed before the State Board. If the local residency hearings had occurred, both Bozrah and Norwich would have had the sole burden of proof in each of those hearings, respectively, under Section 10-186(b)(1).
Bozrah cites no case authority in support of its argument that the State Board must allocate the burden of proof to the first party claiming ineligibility under Section 10-186 (b)(1) or to one of two boards of education contesting ineligibility under Section 10-186 (b)(1).
[I]nterpretation of a statute by an agency created to administer the statute is traditionally accorded great deference." E.I.S., Inc. v. Board of Registration, 200 Conn. 145,148 (1986). Since both Bozrah and Norwich are contesting responsibility for providing school accommodations and each would have had the burden of proof at a local residency hearing, the State's Board interpretation of Section 10-186 (b)(1) as assigning the burden of proof to both boards at the combined hearing appears reasonable and is entitled to deference by this court.
Moreover, Bozrah, through counsel, agreed to waive the local residency hearing and to have the matter proceed directly to the combined hearing before the State Board. Having waived the local hearing and agreed to a joint hearing, Bozrah cannot now claim that the State Board improperly allocated the burden of proof.
 V. Connecticut General Statutes 10-76d(e)(2) and 10-253(a).
In determining that Bozrah was responsible for providing for educational accommodations for William, the State Board interpreted Connecticut General Statutes Section 10-76d(e)(2) and Section 10-253 (d).
Section 10-76d(e)(2) provides in pertinent part: CT Page 2934
 (W)henever a public agency . . . places a child in a foster home, group home, hospital, state institution, receiving home, custodial institution or any other residential or day treatment facility, and such child requires special education, the local or regional board of education under whose jurisdiction the child would otherwise be attending school or, if no such board can be identified, the local or regional board of education of the town where the child is placed, shall: . . . (B)be financially responsible for the reasonable costs of special education instruction, . . . (Emphasis added).
Section 10-253 (d) provides in pertinent part:
 Children residing with relatives or nonrelatives, when it is the intention of such relatives or nonrelatives and of the children or their parents or guardians that such residence is to be permanent, provided without pay and not for the purpose of obtaining school accommodations, . . . shall be entitled to all free school privileges accorded to resident children of the school district in which they then reside.
(Emphasis added).
The State Board decided that because William's father put him in the care of another, the State Board, in order to determine which locality would have to pay for William's education under Section 10-76d(e)(2), would have to analyze residency by examining the validity of William's initial placement out of the parental home. In making this determination, the State Board held that there was no placement under Section 10-253 (d), because the placement of William by his father with Gagnon was for pay. Therefore, the State Board decided that the father's move to the town of Bozrah transfered William's residence to the town of Bozrah and triggered Bozrah's obligation to pay for William's education under Section 10-76d(e)(2).
Bozrah agreed with the State Board's reasoning that Section 10-253 (d) must be read in conjunction with Section 10-76d(e)(2) in order to determine residency and financial CT Page 2935 responsibility. However, Bozrah contends that the State Board erred in construing the "without pay" condition of Section 10-253 (d). Bozrah claims that "without pay" means without salary and does not include funds paid for living expenses. Bozrah argues that William's placement with Gagnon in the city of Norwich was "without pay" and that it was a valid placement under Section 10-253 (d), thereby making Norwich liable for William's educational costs.
It has been held that when minors shared living expenses, including apartment rental, with an adult roommate, the minors did not meet the requirement that the minors' residence be provided "without pay" under a predecessor statute to Section 10-253 (d). Clark v. Green 29 Conn. Sup. 436,438-39 (Sup.Ct. 1971). Under Section 10-76d(e)(2), the "Commissioner of Education and the State Board of Education have accepted and consistently construed the clause. . . `board of education under whose jurisdiction the child would otherwise be attending school. . . `to refer to the board in whose district the child's parent(s) reside." R.P. v. Mansfield Board of Education, Impartial Hearing Board, Department of Education, No 86, p. 4 (October 2, 1986.)
As the Clark court reasoned, there is no distinction between payments made for living expenses or salary under Section 10-253 (d). Therefore, any payments received would not meet the "without pay" requirement of Section 10-253 (d). Additionally, if there was no placement under Section 10-253 (d), the responsible local board of education would have to be determined by the residence of the child's parents under Section 10-76d(e)(2).
William's father kept William with Gagnon after the death of William's mother and stopped paying Gagnon after a short period of time. It was the father's intention that this arrangement be permanent. Gagnon sought payment from the deceased mother's social security checks. When those payments were threatened, Gagnon became licensed and paid by the DCYS.
Based upon these facts, the State Board found that William's placement with Gagnon was intended to be permanent and that Gagnon desired to receive payment for this arrangement. Therefore, the State Board determined that the arrangement was permanent, for pay and thus not a Section 10-253 (d) placement. Further, the State Board found that since there was no Section 10-253 (d) placement, the local board of education responsible under Section 10-76d(e)(2) for William's education is dependent on the father's residence and since William's father resided in the town of Bozrah, Bozrah is the jurisdiction financially responsible for William's education. CT Page 2936
The State Board's decision was grounded upon the evidence in the record, and the State Board's application of the law logically followed from the facts. Therefore, the court finds that Bozrah has failed to demonstrate that the State Board's decision was unreasonable, arbitrary, illegal or an abuse of discretion.
VI. Conclusion
For the reasons stated above, Bozrah's appeal is dismissed.
HENDEL, JUDGE