[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON COUNT THREE
In the Third Count of the Third Amended Complaint, the plaintiff alleges that specific conduct of the defendant constituted "unfair and/or deceptive acts and practices in the conduct of a trade or commerce" in violation of the Connecticut Unfair Trade Practices Act ("CUTPA").
The specific conduct claimed by the plaintiff to be violative of CUTPA is as follows:
 False holding out by the defendant, Charles L. George, that he and North American Planning Corporation (NAPC) provided objective investment advice tailored to the plaintiffs' individual needs and investment goals.
 Concealing the fact that he received commissions and that he steered the plaintiffs toward investments that generated commissions for him.
 Masquerading as a legitimate investment advisor who was authorized and competent to give investment advice regarding coins and other investments.
 Concealing the true nature of the coin transaction and by creating a false impression of the American National Bank of Meriden's involvement in the coin transaction.
CT Page 5407
The plaintiff claims that the acts listed above were unfair and "deceptive." In Connecticut, the test for a "deceptive act or practice" under CUTPA is a three-pronged test. The test requires the plaintiff to allege and prove:
 1. That the defendant made a representation, omission or other act likely to mislead the plaintiff;
 2. That the plaintiff interpreted the defendant's act, omission or statement reasonably under the circumstances; and
 3. That the act, omission or statement was material, i.e., it was likely to affect the plaintiff's decisions or conduct.
See Caldor Inc. v. Heslin, 215 Conn. 590, 597, 577 A.2d 1009
(1990). The test for determining whether an act is "unfair" for purposes of CUTPA, is also a three-pronged test. Conawayv. Prestia, 191 Conn. 484, 492-93, 464 A.2d 847 (1983). The court looks to three elements in determining whether particular acts or conduct is "unfair:"
 1. Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness;
 2. Whether it is immoral, unethical, oppressive, or unscrupulous;
 3. Whether it causes substantial injury to consumers or competitors or other businessmen.
All three criteria do not need to be satisfied to support a the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Associated InvestmentCo. Ltd. Partnership v. Williams Associates IV, 230 Conn. 148,155-156 (1994).
The facts are as follows. On April 25, 1987 the CT Page 5408 defendant Charles George came to the home of the plaintiffs Mike and Despina Harris. The defendant and the plaintiffs had known each other for some time prior to that date. Mike Harris was Charles George's tailor and Despina Harris and Charles George had worked together for some five years at Pratt and Whitney Aircraft as purchasing agents. Charles George had since left Pratt and Whitney and worked elsewhere for a couple of years. At this time Charles George had begun working for his brother who owned a corporation which held itself out as offering financial planning services.
Charles George's visit of April 25, 1987, was for the express purpose of soliciting the Harrises as clients for NAPC. The Harrises were told by George that he would take their application together with a partial fee of $175 and that if they were accepted as clients by NAPC the balance of the fee of $725.00 would be payable. On this first visit the Harrises told the defendant George that they wanted to invest safely and that they did not want to lose any money.
On May 6, 1987, the defendant George again came to the plaintiffs' home and advised them their application had been accepted; requested and received the balance of the fee, $725.00. In his initial discussion with the Harrises, defendant George had told them a financial plan would be tailored to the Harrises' individual needs and investment goals. Once accepted as clients a "fact find" was completed by the defendant George which included information solicited by him from the Harrises about their assets, income and expenses. The Harrises were told by George that this information would be the basis on which a financial plan would be prepared for them by NAPC which included among its professionals an attorney, a tax advisor, an insurance representative as well as NAPC's own staff.
The Harrises' plan was received by them several weeks later. Following receipt of the financial plan the defendant George reviewed with the Harrises the investments which had been designated for them in the financial plan. The centerpiece proposal was the investment in coins. The Harrises were told by George that such an investment would appreciate in value 15% to 20% a year and that such an investment was as liquid as cash. A second significant investment designated in the financial plan was the purchase of a condominium which the defendant told the Harrises he CT Page 5409 would manage for them. A third investment designated was the purchase of a mutual fund.
Though the Harrises had been told by the defendant George that the financial plan was tailored to their individual needs, the defendant gave essentially the same investment plan to each of his clients regardless of their individual investment needs and goals. Each was advised to buy coins under the same "leveraging" program; and each was advised to buy a condominium, financed through the CityCorp Mortgage Company, and a mutual fund. Sally Hurlbert, who was approximately 60 years old at the time she dealt with the defendant, and who was on the verge of retiring with her husband, received the same investment plan from the defendant as Denise Capatani, who was 29 years old, with children aged 3 and 5. And both received the same plan as the plaintiffs, who were both middle aged and employed with no plans for retirement in the immediate future.
The Harrises and other clients of Charles George were not told by him that he received commissions on the investment vehicles he handled for them. One client who specifically asked Charles George whether he received commissions was told by George that he received none and that he was paid from the annual fees paid by the client to NAPC for the financial planning services provided them. The agreement signed by the Harrises and other of Charles George's clients carried the statement ". . . that NAPC and its affiliates `may' take a commission." This is the disclosure the defendant George considered as notice to the plaintiffs and his other clients that he would be receiving commissions. Neither the Harrises nor his other clients understood from that that Charles George would be making commissions on the sale of the coins and the condominiums. Charles George neither told them nor did he explain that the term "affiliates" included an NAPC employee like himself.
The defendant Charles George was not licensed to give investment advise or to engage in financial planning. Neither the Harrises nor his other clients knew this. Charles George did not tell them. Nor were they told that NAPC itself had never been registered as an investment advisor in Connecticut. The Harrises dealt exclusively with Charles George. He was the one who told them about the investments, who took them through the steps needed to make the investments and who CT Page 5410 encouraged the Harrises to make them. At no time did Charles George tell the Harrises or his other clients that he could not give them investment advice. The financial plan generated by NAPC was the vehicle by which the defendant George marketed to his client the investments listed. His clients bought because they got from him that they should buy. The Harrises and defendant George's other clients thought of him as their financial advisor and used him as their financial advisor and he by his actions fostered this belief.
Charles George by his actions led the Harrises into questionable investments one of which, the coin collection, resulted in the loss of over $30,000. The Harrises received less than $5,000 when they sold their coins a year and a half after their purchase. This fell far short of the 15% to 20% appreciation a year which Charles George had represented to the Harrises their investment in coins would earn for them.
From the facts found this court concludes that the defendant Charles George falsely held out that he and NAPC provided objective investment advice tailored to the plaintiffs' individual needs and investment goals; that the defendant Charles George failed to disclose that he received commissions on the investments he advised the plaintiffs to make; that the defendant Charles George held himself out as an investment advisor competent and qualified to give investment advise when he was not. All of those actions by the defendant Charles George were unfair and deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act § 42-110a
et seq.
Judgment may enter for the plaintiffs Mike Harris and Despina Harris in the amount of $55,000 compensatory damages together with attorney fees to be determined at an evidentiary hearing to take place before this court.
Mary R. Hennessey, Judge