15-179-cv
AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Systems, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of February, two thousand sixteen.

PRESENT: REENA RAGGI,
 DENNY CHIN,
 CHRISTOPHER F. DRONEY,
  *Circuit Judges*.

------------------------------------------------------------------------

AT ENGINE CONTROLS LTD.,
  *Plaintiff-Counter-Defendant-Appellant*,

  v.  No. 15-179-cv

GOODRICH PUMP & ENGINE CONTROL SYSTEMS, INC.,
  *Defendant-Counter-Claimant-Appellee*,

GOODRICH CORPORATION,
  *Defendant*.

------------------------------------------------------------------------

APPEARING FOR APPELLANT: THOMAS M. BYRNE (John H. Fleming and Tracey K. Ledbetter, *on the brief*), Sutherland Asbill & Brennan LLP, Atlanta, Georgia.

1

APPEARING FOR APPELLEE:        MARC L. ZAKEN (Kelly M. Cardin, *on the brief*), Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Stamford, Connecticut.

Appeal from a judgment of the United States District Court for the District of Connecticut (Jeffrey A. Meyer, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on December 23, 2014, is AFFIRMED.

In this diversity action, plaintiff AT Engine Controls Ltd. ("ATEC") sued defendant Goodrich Pump & Engine Control Systems, Inc. ("GPECS") for alleged misappropriation of proprietary data. On appeal from an award of summary judgment to GPECS, ATEC challenges the determination that its claims were untimely under Connecticut law. We review a statute-of-limitations-based award de novo and will affirm if the record, viewed most favorably to the non-moving party, reveals no genuine issue of material fact and the movant's entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Nunn v. Massachusetts Cas. Ins. Co., 758 F.3d 109, 114 n.4 (2d Cir. 2014). We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm largely for the reasons stated by the district court in its thorough and well-reasoned opinion. See AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc., No. 3:10-cv-01539 (JAM), 2014 WL 7270160 (D. Conn. Dec. 18, 2014).

1. <u>Contract Claims</u>

ATEC does not dispute that its contract-based claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment arose no later than 2003, when GPECS allegedly used ATEC's proprietary technology. Nor does it dispute that, absent tolling, these claims, filed on September 28, 2010, were untimely under Connecticut's six-year statute of limitations. <u>See</u> Conn. Gen. Stat. § 52-576(a). Rather, ATEC faults the district court for concluding as a matter of law that the statute had not been tolled—at least through September 2004—by GPECS's fraudulent concealment of the alleged breach. <u>See</u> <u>id.</u> § 52-595. To secure tolling by fraudulent concealment, ATEC had to adduce "clear, precise, and unequivocal evidence," <u>Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP</u>, 281 Conn. 84, 105, 912 A.2d 1019, 1033 (2007), that GPECS "(1) had actual awareness, rather than imputed knowledge, of the facts necessary to establish [ATEC's] cause of action; (2) intentionally concealed these facts from [ATEC]; and (3) concealed the facts for the purpose of obtaining delay on [ATEC's] part in filing a complaint on [its] cause of action," <u>Iacurci v. Sax</u>, 313 Conn. 786, 799–800, 99 A.3d 1145, 1154 (2014) (internal quotation marks omitted). As the district court correctly determined, ATEC failed to carry its burden to establish GPECS's intentional concealment, the second element of its tolling claim.

ATEC adduced no evidence that GPECS affirmatively misrepresented whether it used technology developed by ATEC for their jointly developed digital electronic control

3

unit ("DECU") in developing the EMC-100.   Indeed, ATEC concedes that it never asked

GPECS about such use.   ATEC insists nonetheless that GPECS's alleged

misrepresentations regarding its competitive intent effectively concealed its use of ATEC's

technology.[1]   Specifically, ATEC argues that (1) although GPECS had contracted with the

Army to develop a "drop-in" control device for helicopters running on T55 engines,

including the Chinook, (2) GPECS assured ATEC that it would not compete with ATEC to

replace the DECU on the Chinook 47-D,[2] (3) which ATEC understood to mean that the

EMC-100 would not be compatible with the DECU, because (4) if it were, that would

necessarily mean that GPECS had misappropriated ATEC's technology.   Accordingly,

ATEC reasons, GPECS intentionally concealed its use of ATEC's technology by implying

that GPECS's device was not <u>compatible</u> with ATEC's, which GPECS did by stating that

its own device would not be <u>used</u> on the 47-D, even though the Army's original Statement

of Work required the devices to be interoperable.

---

[1] In opposing summary judgment, ATEC also argued that even absent <u>affirmative</u> concealment, GPECS's misappropriation was "self-concealing," a theory that the Connecticut Supreme Court has yet to adopt.  <u>See</u> S.A. 24 n.18 (citing <u>Fichera v. Mine Hill Corp.</u>, 207 Conn. 204, 215, 541 A.2d 472, 477 (1988)).  At oral argument on this appeal, ATEC explicitly abandoned this claim and, thus, we do not consider it further.

[2] ATEC acknowledges that nothing in its 1979 Marketing Agreement with GPECS prevented GPECS from developing a competing device, so long as GPECS did not misappropriate ATEC's technology.

4

The argument fails because GPECS never stated, and ATEC never asked, whether its device would be compatible with DECU technology.[3]  Rather, the record shows only that GPECS repeatedly explained that it did not intend to use its device on the 47-D because it was not economically rational to do so, not because the devices were incompatible.  Nor is there record support for ATEC's assumption that GPECS's representation that its device would not <u>compete</u> with the DECU on the 47-D meant that GPECS's device would not be <u>compatible</u> with the DECU.  In fact, ATEC's argument—that had GPECS disclosed its intent to replace the DECU on the 47-D, ATEC would have known the facts necessary to bring its contract claims—is contradicted by its assertion that it could not have concluded the devices were interoperable even in 2008, when ATEC learned that GPECS had replaced the DECU on the 47-D.

While ATEC argues that, on summary judgment, it was entitled to the inference that GPECS's disclaimer of competitive intent disavowed use of ATEC's proprietary data, we disagree.  It is "incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists."  <u>Iacurci v. Sax</u>, 313 Conn. at 799, 99 A.3d at 1154 (internal quotation marks omitted).  In the absence of evidence that GPECS affirmatively represented either (a) that it was not using ATEC's technology, or (b) that its device would

---

[3] Further, in deposing GPECS executive Tony Gentile, ATEC never asked whether he understood any ATEC inquiry to pertain to compatibility, much less to utilization of proprietary technology.

not be compatible with the DECU, no reasonable juror could find GPECS's intentional concealment of its breach established by "clear, precise, and unequivocal evidence." Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP, 281 Conn. at 105, 912 A.2d at 1033.

Because ATEC was therefore not entitled to tolling on fraudulent concealment grounds, the district court correctly granted summary judgment in favor of GPECS on ATEC's untimely contract-based claims.[4]

2.      Tortious Interference Claim

Apart from fraudulent concealment, which we have already rejected as a ground for tolling, ATEC does not challenge the district court's determination that its tortious interference claim based on GPECS's marketing of its device as a replacement for the DECU was barred by Connecticut's three-year statute of limitations for torts. See Conn. Gen. Stat. § 52-577. GPECS began marketing its new technology in a July 2002 press release announcing that it had been selected for use in Chinook engines by 2004; and ATEC does not dispute that, by then, it was aware of GPECS's intent ultimately to replace the DECU. See Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409, 420 (2d Cir. 1999) (holding that plaintiff must establish ignorance of cause of action to assert fraudulent concealment under Conn. Gen. Stat. § 52-595). Accordingly, because

---

[4] As a result, we need not decide whether—as GPECS insists, and the district court further held—ATEC was required to plead fraudulent concealment with particularity under Fed. R. Civ. P. 9(b) in its complaint or amended complaint when GPECS never moved to dismiss the operative complaint as time-barred. Cf. Armstrong v. McAlpin, 699 F.2d 79, 88–89 (2d Cir. 1983).

ATEC's tortious interference claim accrued by 2004, it was time-barred when asserted in September 2010.[5]

### 3.   Connecticut Uniform Trade Secrets Act Claim

As to its claim under the Connecticut Uniform Trade Secrets Act ("CUTSA"), ATEC does not dispute that the relevant statute of limitations imposes a "duty of investigation" on a plaintiff who suspects misappropriation of trade secrets.   S.A. 31; see Conn. Gen. Stat. § 35-56; see also J.A. 1811 ("ATEC's suspicion triggered the duty to investigate . . . .").[6]   Rather, ATEC appears to contend that a reasonable jury could find that, despite its diligence, ATEC could not have discovered the misappropriation before September 2007.   See Appellant Reply 12.   We disagree.

ATEC contends that its "multiple inquiries" to GPECS regarding its "new device and its intended usage and function" established reasonable diligence under the circumstances.   Id. at 8.   This claim rests on ATEC's assumption that GPECS's device would not be compatible with the DECU because GPECS assured ATEC that it would not use its device on the Chinook 47-D, the 47-D was an older aircraft, and, therefore, ATEC presumed, GPECS's device would use newer technology, so that it "would make no sense"

---

[5]  ATEC also does not specifically challenge the district court's further determination that, insofar as its tortious interference claim was premised on GPECS's false misrepresentation of DECU technology as "obsolete," ATEC provided "no evidentiary support for this claim."   S.A. 33.   Accordingly, we deem this argument abandoned on appeal.   See Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 205 n.1 (2d Cir. 2009).

[6]  Neither the Connecticut Supreme Court nor any Connecticut appellate court has published a decision construing this provision of the CUTSA.

7

for GPECS to appropriate ATEC's proprietary data, Appellant Br. 7–8. As we have already observed, however, ATEC never tested the validity of its assumption by asking GPECS the crucial questions—whether its device would be compatible with the DECU, or, more importantly, whether it utilized DECU technology—instead, inquiring only as to whether GPECS would compete to replace the DECU on the 47-D.

ATEC asserts that such inquiries were "unnecessary" to due diligence. Appellant Reply 13. Yet no reasonable jury could reach that conclusion where the record shows that (1) in 2001, ATEC knew that (a) GPECS's device appeared physically to be a "direct copy" of the DECU, and (b) GPECS intended to design a universal controller, J.A. 2029–32; (2) by February 2003, ATEC was seeking legal advice on its intellectual property rights ("IPR") in the DECU vis-à-vis GPECS's new device, see id. at 1182; (3) in August 2004, when selling DECU assets to ATEC, Vosper Thornycroft ("VT") wrote that it suspected "GPECS . . . has copied, without permission, all or part of the T55 [engine] IPR," and that VT "sought external legal advice on this subject," with a view toward "challeng[ing] GPECS in the future should this product become a threat to the use of the T55 IPR in the Business," id. at 1488; (4) in discovery, ATEC produced a document from its files dated September 9, 2004, stating, "Goodrich have been developing their own [device] . . . which they claim could be used in place of [ATEC's] DECU (even on the same airframe/engine as [ATEC's] DECU)—as a Plug and Play replacement. . . . [ATEC] would consider a lawsuit, as Goodrich . . . would have found it hard to prove that their own unit is a Plug and

8

Play replacement without infringing" on ATEC's IPR, <u>id.</u> at 1196[7]; and (5) Terry Madden, ATEC's Chairman, confirmed in March 2006 that "because [ATEC thought] Goodrich cloned some of the design from the existing DECU," ATEC "had thought of asking VT, as IPR owner, to take this up with them," <u>id.</u> at 2905; <u>see also</u> <u>id.</u> at 2289.

As evidence of a genuine issue notwithstanding these facts, ATEC points to Madden's assertion that VT's August 2004 disclosure generated "no concerns" because in "many of these disclosure documents, everybody puts anything and everything that they think might ever, however unlikely, become an event." <u>Id.</u> at 2279. While a court cannot itself weigh competing evidence or assess credibility on a motion for summary judgment, a party with the burden of demonstrating due diligence must offer more than a self-serving disavowal of concern, particularly where, as here, it also asserts that it "repeatedly

---

[7] ATEC asserts this document is not properly considered both because it is unauthenticated and hearsay. We discern no manifest error in the district court's consideration of the document. <u>See</u> <u>Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.</u>, 164 F.3d 736, 746 (2d Cir. 1998). The bar for authentication is not high, <u>see</u> Fed. R. Evid. 901(a); <u>United States v. Al-Moayad</u>, 545 F.3d 139, 172 (2d Cir. 2008), and here, the document's substantive detail regarding ATEC's business, <u>see</u> Fed. R. Evid. 901(b)(4), as well as the fact that it was produced by ATEC itself, made it "reasonably likely" that it is, as GPECS maintains, a third-party consultant's report, <u>see, e.g.</u>, <u>Rodriguez v. Village Green Realty, Inc.</u>, 788 F.3d 31, 47 (2d Cir. 2015).

ATEC's hearsay objection also fails because the document is not considered for its truth, <u>i.e.</u>, that ATEC knew GPECS's device was compatible with the DECU or that it contemplated suing GPECS. <u>See</u> Fed. R. Evid. 801(c)(2). Rather, the document shows that ATEC had access to information that due diligence required it to pursue. In other words, this document's presence in ATEC's files makes it less likely that its investigation was reasonable. <u>See</u> <u>United States v. Dupree</u>, 706 F.3d 131, 137 (2d Cir. 2013) (noting "statement is not hearsay where, as here, it is offered, not for its truth, but to show that a listener was put on notice").

9

attempted to investigate [GPECS]'s new device during the ten years it was being developed," Appellant Reply 12, and that its inquiries regarding GPECS's competitive intent amounted to an investigation of GPECS's use of ATEC's technology. See Cameron v. City of New York, 598 F.3d 50, 59 (2d Cir. 2010) ("[O]ur obligation to draw all reasonable inferences in favor of [the non-movant] does not mean we must credit a version of the facts that is belied by the record." (internal quotation marks omitted)). In these circumstances, ATEC's failure even to inquire as to the critical fact for its claim—whether GPECS used ATEC's proprietary information from the DECU in developing the EMC-100—precludes it from demonstrating due diligence, without which it cannot establish a CUTSA violation.

Accordingly, the district court correctly determined that because ATEC had failed to raise a triable issue of reasonable diligence prior to September 2007, its CUTSA claim was time-barred.

4.    Connecticut Unfair Trade Practices Act Claim

ATEC argues that its claim under the Connecticut Unfair Trade Practices Act ("CUTPA"), see Conn. Gen. Stat. § 42-110b(a) (prohibiting "unfair or deceptive acts or practices in the conduct of any trade or commerce"), is not barred by the statute's three-year limitations period, see id. § 42-110g(f), because it adduced sufficient evidence for a reasonable jury to find that GPECS's April 2009 email inquiry was a "deceptive act." See J.A. 1598–1601.   The district court did not address this argument in its December 18,

10

2014 order, although ATEC did assert it in opposing summary judgment. GPECS nonetheless urges us to affirm dismissal of the CUTPA claim on the grounds that ATEC failed adequately to plead this email act in its Amended Complaint and, in any event, that the email inquiry was not a "deceptive act" as a matter of law. Because we affirm on the former basis, we do not reach the latter.

There is no dispute that ATEC's Amended Complaint does not specifically mention the email inquiry. Nor does ATEC contend that it was entitled to raise new claims in response to GPECS's motion for summary judgment. See Greenidge v. Allstate Ins. Co., 446 F.3d 356, 361 (2d Cir. 2006). Rather, ATEC argues that its CUTPA claim was sufficiently pleaded through its assertion that "GPECS's conduct as alleged constitutes unfair or deceptive acts or practices" within the meaning of the statute, see Am. Compl. ¶ 54, together with its allegation that GPECS "improperly used [ATEC's] proprietary information and technology to develop a competing engine control unit," see id. ¶ 28.

Assuming arguendo that Fed. R. Civ. P. 9(b) did not require ATEC to plead its CUTPA claim with particularity, cf., e.g., Associated Inv. Co. Ltd. P'ship v. Williams Assocs. IV, 230 Conn. 148, 158, 645 A.2d 505, 510 (1994) (stating that fraud requires "proof that defendant knew of falsity of representation, whereas CUTPA claimant need not prove defendant's knowledge that representation was false"), ATEC's allegations still fail to comply with Rule 8. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

11

not suffice."). In other words, ATEC's assertion that GPECS committed "unfair or deceptive acts or practices" because it "improperly used" ATEC's proprietary technology did not provide GPECS with sufficient notice of the CUTPA claim asserted against it—the "central purpose of a complaint." Greenidge v. Allstate Ins. Co., 446 F.3d at 361; see Caldor, Inc. v. Heslin, 215 Conn. 590, 597, 577 A.2d 1009, 1013 (1990) (stating that act is "deceptive" under CUTPA where plaintiff offers proof of material representation or omission that is reasonably likely to mislead); see also Macomber v. Travelers Prop. & Cas. Corp., 261 Conn. 620, 635–36, 804 A.2d 180, 191 (2002) (noting that omission is deceptive "only if, in light of all the circumstances, there is a duty to disclose" (internal quotation marks omitted)). As GPECS points out, the Amended Complaint did not even generally allege that GPECS sought to obtain DECU technology from ATEC through some kind of duplicity. This failure precludes relief.

To the extent ATEC was unable to plead a CUTPA claim based on the email until it had conducted discovery, the proper course then would have been to seek leave to amend pursuant to Fed. R. Civ. P. 15(a)(2). See, e.g., Mauro v. Southern New Eng. Telecomms., Inc., 208 F.3d 384, 386 n.1 (2d Cir. 2000). Indeed, ATEC did move to amend its complaint almost two months after filing its opposition; but its proposed Second Amended Complaint contained no further allegations regarding this claim. Accordingly, we affirm the district court's conclusion that the CUTPA claim was time-barred because ATEC's pleadings were insufficient to allege that GPECS engaged in any unfair or deceptive acts or

12

practices within three years of initiating this action.  See Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 482 (2d Cir. 2014) (approving affirmance on any basis supported by record).

5.    Conclusion

We have considered ATEC's remaining arguments and conclude that they are without merit.   Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court