## Grievance Committee for the Hartford-New Britain Judicial District *v.* Joseph J. Trantolo, Jr., et al.
### (10775)

Speziale, C. J., Peters, Parskey, Grillo and Ment, Js.

Argued October 5, 1983—decision released January 3, 1984

*Maxwell Heiman,* with whom, on the brief, was *William J. Tracy, Jr.,* for the appellants (defendants).

*Arnold M. Schwolsky,* assistant state's attorney, with whom were *Philip R. Dunn,* grievance committee counsel, and, on the brief, *John M. Bailey,* state's attorney, for the appellee (plaintiff).

SPEZIALE, C. J. The defendants, Joseph Trantolo and Vincent Trantolo, are members of the bar authorized to practice law in the state of Connecticut. They have appealed from the trial court's judgment reprimanding them for violating Disciplinary Rule 2-101 of the Code of Professional Responsibility (hereinafter DR 2-101). Because we hold that the defendants' actions are not prohibited by the Code of Professional Responsibility, we find error.

The defendants operated several law offices in the state under the name of "The Connecticut Law Clinic of Trantolo and Trantolo." In September, 1978, the defendants launched an advertisement campaign involving four commercials,[1] which were broadcast by

---

[1] The trial court identified and summarized the commercials as follows:

"The four commercials which were viewed by the court at the hearing may be designated for ease of reference as the 'Divorce Case', 'Mumbo Jumbo', 'Accident Case' and 'Bankruptcy Case' advertisement, respectively. . . .

"The 'Divorce Case' scene showed a couple discussing a division of their property. After they agree to split everything 'right down the middle', the husband uses a power saw to cut through a table and a sofa while their dog looks on soulfully, possibly with some concern that he may suffer the same fate. The announcer then states:

" 'When a marriage gets in trouble, everyone wants to be fair. But that's not always so easy. The law offices of Trantolo and Trantolo can help you through those difficult times. Because we understand that people facing

a Hartford area television station. On January 16, 1981, the plaintiff[2] filed a substituted complaint in the

a divorce don't need any more problems than they already have. The law offices of Trantolo and Trantolo.' . . .

"The 'Mumbo Jumbo' ad shows a judge and a lawyer in a courtroom saying only the words 'Mumbo' and 'Jumbo' to each other. The announcer then says:

" 'When you're faced with bankruptcy, divorce or possible criminal charges, you don't have to be confused by the law. You can be helped by it. Because our courts are designed to serve ordinary people. So are the law offices of Trantolo and Trantolo.' . . .

"The 'Accident Case' ad shows a victim of an auto accident pinned under an overturned car. He is approached by another man whereupon the following dialogue takes place:

" 'MAN #1: Hi there, big guy! I represent the cement truck. You just sign this release and it will settle everything.

" 'MAN UNDER CAR: Release?

" 'MAN #1: I can wait until you have a free arm.

" 'MAN UNDER CAR: Arm?

" 'MAN #1: Which one do you write with?

" 'ANNOUNCER: If you're involved in an accident, don't ever sign away your legal rights. Protect them. Call the law offices of Trantolo and Trantolo.

" 'MAN #1: Can you hold the pen in your teeth?' . . .

"The 'Bankruptcy Case' shows a man sitting in his living room in front of a television set with a bowl of popcorn. Two men come in and proceed to strip the room of all its furnishings including the television set and finally the bowl of popcorn. The announcer then states:

" 'ANNOUNCER: When financial tragedy strikes you, you don't have to lose everything, there are laws to protect you. Bankruptcy laws. The law offices of Trantolo and Trantolo can help you protect yourself, because the law is designed to serve ordinary people. So are the law offices of Trantolo and Trantolo.' "

[2] Practice Book § 27B provides that the judges of the Superior Court shall appoint at least one grievance committee, consisting of three members of the bar, for each judicial district. Practice Book § 27B (b) (1) states that each committee shall have the power and duty to: "On its own motion or on complaint of any person, inquire into and investigate offenses not occurring in the actual presence of the court involving the character, integrity, professional standing and conduct of members of the bar in this state." The Superior Court may suspend or disbar attorneys. Practice Book § 29. Practice Book § 31 provides that: "Presentment of attorneys for misconduct not occurring in the actual presence of the court shall be made by written complaint of the grievance committee . . . ." See General Statutes § 51-90.

The grievance committee held its own hearings on these charges before bringing action in the Superior Court.

Superior Court for the judicial district of Hartford-New Britain against the defendants, alleging that the four commercials violated DR 2-101.[3] The complaint alleged

[3] "DR 2-101 PUBLICITY IN GENERAL.

"(A) A lawyer shall not, on behalf of himself, his partner, associate or any other lawyer affiliated with him or his firm, use, or participate in the use of, any form of public communication containing a false, fraudulent, misleading, deceptive, self-laudatory or unfair statement or claim, nor shall any such communication be in an extravagant format.

"(B) In order to facilitate the process of informed selection of a lawyer by the public, a lawyer may publish, subject to DR 2-103 and any guidelines adopted by the Superior Court, the following information in newspapers, periodicals and other printed publications provided that the information disclosed by the lawyer in such publication complies with DR 2-101 (A) and is presented in a dignified manner:

"(1) Name, including name of law firm and names of professional associates, office addresses and telephone numbers.

"(2) As may be authorized subject to DR 2-105 and DR 2-105A, one or more fields of law in which the lawyer or law firm practices, a statement that practice is limited to one or more fields of law, or a statement that the lawyer or law firm specializes in a particular field of law practice.

"(3) Date and place of birth.

"(4) Date and place of admission to the bar of state and federal courts.

"(5) Schools attended, with dates of graduation, degrees and other scholastic distinctions.

"(6) Public or quasi-public offices.

"(7) Legal authorships.

"(8) Legal teaching positions.

"(9) Memberships, offices, and committee assignments in bar associations.

"(10) Technical and professional licenses.

"(11) Foreign language ability.

"(12) Open prepaid or group legal services programs in which the lawyer has committed himself to participate.

"(13) Whether credit cards or other credit arrangements are accepted.

"(14) Office and telephone answering service hours.

"(15) Fee for an initial consultation.

"(16) Availability upon request of a written schedule of fees and/or an estimate of the fee to be charged for specific services.

"(17) Contingent fee rates subject to DR 2-106 (C), provided that the statement discloses whether percentages are computed before or after deduction of costs.

"(18) Range of fees for services, provided that the statement discloses that the specific fee within the range which will be charged will vary depending upon the particular matter to be handled for each client and that the

that DR 2-101 prohibits attorneys from advertising their services on television and, in the alternative, that these advertisements were prohibited because "they contained a false, fraudulent, misleading, deceptive, self-laudatory or unfair statement [or] claim and they were presented in an extravagant format and in an undignified manner," also in violation of DR 2-101. The complaint requested that the court order the defendants to show cause why they should not be "disbarred or otherwise disciplined" for the alleged violations. The defendants responded by denying that the commercials violated DR 2-101 and by claiming in a special defense that the advertisements were protected speech under the first amendment to the United States constitution and article first, § 4 of the Connecticut constitution.

client is entitled without obligation to an estimate of the fee within the range likely to be charged, in print size equivalent to the largest print used in setting forth the fee information.

"(19) Fixed fees for specific legal services, the description of which would not be misunderstood or be deceptive, provided that the statement discloses that the quoted fee will be available only to clients whose matters fall into the services described and that the client is entitled without obligation to a specific estimate of the fee likely to be charged, in print size at least equivalent to the largest print used in setting forth the fee information.

"(C) When a lawyer publishes a fee for a service and thereafter renders the service, it must be rendered for no more than the fee advertised.

"(D) Unless otherwise specified in the publication, if the lawyer publishes any fee information authorized under DR 2-101 (B), the lawyer shall be bound by any representation made therein for the following periods:

"(1) If published in newspapers and periodicals that are published more frequently than one time per month, for a period of not less than 30 days.

"(2) If published in newspapers and periodicals that are published once a month or less frequently, for the period until the next publication.

"(3) If published in newspapers, periodicals or other printed publications which have no fixed date for the publication of a succeeding issue, for one year.

"(E) This rule does not prohibit limited and dignified identification of a lawyer as a lawyer as well as by name:

"(1) In political advertisements when his professional status is germane to the political campaign or to a political issue.

"(2) In public notices when the name and profession of a lawyer are

The trial court rendered judgment against the defendants on April 22, 1981, and reprimanded them for the violation. The trial court ruled that DR 2-101 does not permit televised advertising by attorneys and that the advertisements were not constitutionally protected.

In their appeal the defendants claim that the trial court erred in holding that DR 2-101 prohibits televised advertisements and that the advertisements could not be considered constitutionally protected commercial speech. We agree.

We begin by noting that the Code of Professional Responsibility, as adopted by the judges of the Superior Court,[4] neither explicitly prohibits nor explicitly authorizes the advertising of legal services through the electronic media. The plaintiff contends, however, that the evolution of DR 2-101 into its present form demonstrates that the Superior Court judges clearly intended to restrict lawyer advertising to the various print media. The defendants argue that the rule intends no such limitation.

Before 1977, the Connecticut Code of Professional Responsibility, DR 2-101, essentially followed the provisions of the American Bar Association's (hereinafter ABA) Model Rule. Subsection (A) prohibited "any form of public communication that contains professionally

required or authorized by law or are reasonably pertinent for a purpose other than the attraction of potential clients.

"(3) In routine reports and announcements of a bona fide business, civic, professional, or political organization in which he serves as a director or officer.

"(4) In and on legal documents prepared by him.

"(5) In and on legal textbooks, treatises, and other legal publications, and in dignified advertisements thereof."

[4] The Superior Court judges adopted the Code of Professional Responsibility on October 1, 1972, as adopted by the American Bar Association and recommended by the Connecticut Bar Association. The judges have amended the code at various times since.

self-laudatory statements calculated to attract lay clients." The rule went on to define a "public communication" as including "communication by means of television, radio, motion picture, newspaper, magazine, or book." Connecticut Code of Professional Responsibility DR 2-101 (A) (1976); ABA Model Code of Professional Responsibility DR 2-101 (A) (1976). Subsection (B) stated that "[a] lawyer shall not publicize himself, his partner, or associate as a lawyer through newspaper or magazine advertisements, radio or television announcements, display advertisements in city or telephone directories, or other means of commercial publicity." Connecticut Code of Professional Responsibility DR 2-101 (B) (1976); ABA Model Code of Professional Responsibility DR 2-101 (B) (1976). In effect, the code prohibited any form of advertisement of legal services. In 1977, the United States Supreme Court decided the case of *Bates* v. *State Bar of Arizona,* 433 U.S. 350, 97 S. Ct. 2691, 53 L. Ed. 2d 810, reh. denied, 434 U.S. 881, 98 S. Ct. 242, 54 L. Ed. 2d 164 (1977). In *Bates* the court considered a challenge to Arizona's DR 2-101 (B), which was identical to the Connecticut rule, on grounds that the rule violated the first amendment. The court struck down the rule as an unconstitutional abridgement of free expression, holding that although a state may impose some restrictions on lawyer advertising, it may not impose a blanket suppression of such speech. *Bates* v. *State Bar of Arizona,* supra, 383.

In 1978, the judges of the Superior Court responded to *Bates* by amending DR 2-101 to its present form. Instead of prohibiting all advertising, the rule now specifically authorizes advertising in "printed publications" and identifies a variety of data concerning types of services offered, location, financial arrangements, and biographical information that may be published. DR 2-101 (B). It prohibits an attorney only from making a "false,

fraudulent, misleading, deceptive, self-laudatory or unfair statement or claim." DR 2-101 (A). Although the ABA Model Code revision after *Bates* specifically authorizes advertisements through electronic media, the Connecticut Code neither explicitly authorizes nor explicitly prohibits television or radio advertisements. The plaintiff argues, and the trial court ruled, that the Superior Court judges' authorization of published advertisements, and the accompanying guidelines, demonstrate that the judges intended to continue the ban on electronic media advertising.

The rules of statutory construction apply with equal force to Practice Book rules. *State* v. *Cook,* 183 Conn. 520, 521, 441 A.2d 41 (1981). "Where the meaning of a statute [or rule] is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. Its unequivocal meaning is not subject to modification by way of construction. *Holmquist* v. *Manson,* 168 Conn. 389, 393, 362 A.2d 971 (1975); *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36 (1967); *State* v. *Springer,* 149 Conn. 244, 248, 178 A.2d 525 (1962)." *Connecticut State Board of Labor Relations* v. *Board of Education,* 177 Conn. 68, 73, 411 A.2d 28 (1979). If a statute or rule is ambiguous, however, we construe it with due regard for the authors' purpose and the circumstances surrounding its enactment or adoption. *Anderson* v. *Ludgin,* 175 Conn. 545, 552, 400 A.2d 712 (1978); *City Savings Bank* v. *Lawler,* 163 Conn. 149, 157, 302 A.2d 252 (1972). Because DR 2-101 does not address the issue of electronic advertising, it is ambiguous and must be construed to determine its true meaning.

We are persuaded that the rule does not intend a blanket prohibition on advertising through electronic media. Given that the current version of DR 2-101 was adopted in direct response to *Bates,* it is obvious that

the Superior Court judges intended to formulate a rule that would carry out the mandate of *Bates*. Although the United States Supreme Court did not address specifically the propriety of electronic advertising in the *Bates* decision, the reasoning of the court's opinion clearly indicates that a complete ban on such advertising is repugnant to the freedom of speech guarantees embraced by both the United States and Connecticut constitutions.[5] Such a ban, therefore, was not intended by the judges of the Superior Court in adopting DR 2-101.

The constitutional protection for commercial speech was unequivocally established for the first time in *Virginia State Board of Pharmacy* v. *Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S. Ct. 1817, 48 L. Ed. 2d 346 (1976). There the court struck down a state statute barring pharmacists from advertising the prices of prescription drugs. It ruled that commercial speech, defined as communication designed to further the speaker's economic interests, merits limited first amendment protection and may not be prohibited absent a showing of compelling reasons. The court noted that society's "strong interest in the free flow of commercial information" required first amendment protection for commercial speech. *Virginia State Board of Pharmacy* v. *Virginia Citizens Consumer Council, Inc.*, supra, 764. "So long as we preserve a predominantly free enterprise economy, the allocation of our resources in large measure will be made through numerous private economic decisions. It is a matter of public

---

[5] Because we have not had occasion to examine the commercial speech doctrine solely on state constitutional grounds, independent of federal constitutional analysis, we take guidance from the United States Supreme Court's decisions in this area. We note, however, that the freedom of expression guarantees contained in article first, §§ 4 and 5 of the Connecticut constitution are at least as broad as the similar federal guarantee and provide an independent basis for our holding in this case.

interest that those decisions, in the aggregate, be intelligent and well informed. To this end, the free flow of commercial information is indispensable." Id., 765.

From there the United States Supreme Court went on to strike down Arizona's total ban on all lawyer advertising in *Bates* on the grounds that such a ban inhibited the free flow of commercial information thereby thwarting both the bar's obligation to make legal services available to all who need them and the consumer's ability to select intelligently an attorney. *Bates* v. *State Bar of Arizona,* supra, 377 (citing ABA Model Code of Professional Responsibility, Ethical Consideration 2-1 [1976]).

The United States Supreme Court has made clear, however, that the state is not powerless to regulate commercial speech when the interests of its citizens so require. *Central Hudson Gas & Electric Corporation* v. *Public Service Commission of New York,* 447 U.S. 557, 563–64, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980); *Bates* v. *State Bar of Arizona,* supra, 383–84; *Virginia State Board of Pharmacy* v. *Virginia Citizens Consumer Council, Inc.,* supra, 770–73. "Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the states may impose appropriate restrictions." *In the Matter of R.M.J.,* 455 U.S. 191, 203, 102 S. Ct. 929, 71 L. Ed. 2d 64 (1982). The standard that the state must meet in order to justify the prohibition of a nonmisleading statement is a stringent one. The state must assert a substantial interest in the restriction, and the regulation must "directly advance the governmental interest asserted" and be no "more extensive than is necessary to serve that interest." *Central Hudson Gas*

*& Electric Corporation* v. *Public Service Commission of New York,* supra, 566, quoted in *In the Matter of R.M.J.,* supra, 203–204 n.15.

The state's interest in regulating advertisements for legal services is certainly substantial. But a blanket restriction on television advertising is not the sort of narrow regulation that the Supreme Court countenanced in *R.M.J.* and *Central Hudson Gas.* In order to satisfy constitutional standards a rule restricting speech must be reasonably designed to prohibit only those statements that threaten a legitimate interest. Freedom of speech simply does not tolerate the sort of blanket approach for which the plaintiff argues. A total ban on advertising through the electronic media would not only exceed the state's legitimate interest in protecting potential consumers, but its overinclusiveness would also keep a great deal of information from consumers, thereby hindering their ability to make an informed choice. The United States Supreme Court has stated "that people will perceive their own best interests if only they are well enough informed, and that the best means to that end is to open the channels of communication rather than to close them." *Virginia State Board of Pharmacy* v. *Virginia Citizens Consumer Council, Inc.,* supra, 770; see *Central Hudson Gas & Electric Corporation* v. *Public Service Commission of New York,* supra, 562; *Linmark Associates, Inc.* v. *Willingboro,* 431 U.S. 85, 92, 97 S. Ct. 1614, 52 L. Ed. 2d 155 (1977).

In permitting electronic media advertising by attorneys the Tennessee Supreme Court noted that "[t]his [freedom of speech] protection would be fragile indeed if it were only applied to certain media and not to others. Advertising is advertising irrespective of the device or instrumentality employed." *In re Petition For Rule of Court,* 564 S.W.2d 638, 643 (Tenn. 1978). Some mem-

bers of our society are functionally illiterate. Many others, because of handicaps, financial circumstances, or personal preference, do not avail themselves of printed material. Thus, television and radio are the informational media of choice for many, and of necessity for others. To restrict the advertising of legal services to those who read published materials would deny these nonreaders important information with no corresponding benefit to them or any other segment of society. We find such a restriction to be repugnant to the commercial speech doctrine and thus violative of both the first amendment to the United States constitution and article first, §§ 4 and 5 of the Connecticut constitution. We conclude, therefore, that DR 2-101 does not contemplate a blanket prohibition on lawyer advertising through the electronic media.

We hasten to add that lawyer advertising is subject to reasonable regulations. For example, the judges of the Superior Court may continue to prohibit the dissemination of unlawful, false, or misleading information irrespective of the media used; *In the Matter of R.M.J.,* supra, 203; *Central Hudson Gas & Electric Corporation* v. *Public Service Commission of New York,* supra, 566; and the judges may adopt regulations designed to assure that only useful, factual, and relevant information is conveyed in advertisements for legal services. But all such regulations must be tailored toward protecting consumers and providing them with relevant and truthful information.

The trial court based its reprimand on its finding that television advertisements are per se a violation of DR 2-101. Therefore, the court did not consider whether the defendants' actions violated the rule on any other grounds. Because we hold that televised advertisements do not constitute a per se violation of DR 2-101, the reprimand may only stand if the advertisements vio-

late the rule in some other way. Specifically, the defendants might be reprimanded if the advertisements were false, fraudulent, or misleading. DR 2-101 (A). On this issue the plaintiff bears the burden of proof. After examining the record, including viewing the four commercials in question, we conclude that the trial court could not have found that the plaintiff had satisfied its burden. The advertisements inform the listener of the value of professional legal assistance in certain situations and make known that the defendants are willing and able to provide such services. Thus they are informative and in no way misleading or deceptive. If some members of the audience find them distasteful, such consumers might very well react by shunning the service offered, thereby imposing an informal sanction more effective than any formal regulation. We hold, therefore, that the defendants did not violate the disciplinary rules by the use of these commercials.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In the opinion the other judges concurred.