## JOHN J. PITCHELL *v.* CITY OF HARTFORD ET AL.
## (SC 15835)

Callahan, C. J., and Borden, Berdon, Norcott and Katz, Js.

Argued September 22, 1998—officially released January 5, 1999

*Timothy Brignole*, for the appellant (plaintiff).

*Henry C. Ide*, for the appellee (defendant Gregory Sargis).

*Opinion*

BERDON, J. The dispositive issue in this certified appeal involves the legal effect of an attorney having filed an appearance for both the named defendant, the city of Hartford (city), and its employee, the defendant Gregory Sargis (Sargis), followed by the subsequent withdrawal of the appearance for Sargis on the ground that it had been filed in error because of a potential conflict of interest. We conclude that, under the circumstances of this case: (1) the appearance for Sargis was filed with proper authority; and (2) the failure of Sargis' attorney to move to dismiss the action against him within thirty days of the filing of the appearance constituted a waiver of Sargis' right to contest personal jurisdiction over him.

The plaintiff, John J. Pitchell, maintains that an attorney from Halloran and Sage (Halloran & Sage), who served as counsel for the city, waived any claim of insufficient service of process on Sargis, a Hartford police officer, by filing an appearance on his behalf and not moving to dismiss within thirty days as required by Practice Book § 10-30, formerly § 142.[1] The trial court

---

[1] Practice Book § 10-30 provides in relevant part: "Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance. . . ."

disagreed and granted Sargis' motion to dismiss based on lack of personal jurisdiction. The plaintiff appealed to the Appellate Court and the majority of the three judge panel that heard the appeal affirmed the trial court's dismissal. *Pitchell* v. *Hartford*, 46 Conn. App. 799, 808, 700 A.2d 1386 (1997). We granted certification to appeal from the judgment of the Appellate Court on the following issue:[2] "Did the Appellate Court properly hold that the appearance of the attorney for the city of Hartford on behalf of the defendant police officer did not waive the employee's right to claim insufficient service of process by way of a motion to dismiss after judgment enters against him for failure to appear? See Practice Book §§ 142 and 144 [now §§ 10-30 and 10-32]." *Pitchell* v. *Hartford*, 243 Conn. 953, 704 A.2d 803 (1997). We now reverse the judgment of the Appellate Court.

This appeal is the outgrowth of an action that the plaintiff originally had commenced against the same three defendants, the city, Sargis and James F. Callan, also a police officer for the city, in the United States District Court for the District of Connecticut (federal action).[3] The federal action was based in part on a claim that Sargis was negligent in failing to prevent Callan from shooting the plaintiff in the course of an incident that had occurred on June 19, 1987. The law firm of Halloran & Sage[4] represented all three defendants

[2] Subsequently, we granted Sargis' motion for permission to raise as an alternate ground for affirmance the plaintiff's failure to provide an adequate record for review. The plaintiff had advanced several grounds for denying Sargis' motion to dismiss, one of which was waiver of service of process. Although the trial court, *Langenbach J.*, made no finding when granting the motion to dismiss, the record in this case is adequate to determine if there was a waiver pursuant to the rules of practice.

[3] *Pitchell* v. *Callan*, United States District Court, District of Connecticut, Docket No. H-89-73 (January 6, 1993).

[4] The appearance was filed by Stephen P. Fogerty of Halloran, Sage, Phelon and Hagarty, the predecessor to Halloran & Sage.

throughout the federal action. In addition to Halloran & Sage's appearance, Henry C. Ide, who is Sargis' attorney of record in this case, also filed an appearance on his behalf in the District Court. Notwithstanding Ide's appearance, Halloran & Sage filed motions and pleadings on behalf of Sargis throughout the federal action.[5] The United States District Court eventually dismissed the plaintiff's federal action, declining to exercise pendent jurisdiction over the state law claims.

Thereafter, on May 31, 1994, the plaintiff brought the present action against the same three defendants in the Superior Court for the state law causes of action that he had alleged in his earlier federal action. The return date for the defendants' appearances was June 28, 1994. Pursuant to General Statutes § 52-59b (c), the plaintiff served Sargis by having the sheriff (1) leave copies of the writ, summons and complaint with the secretary of the state, and (2) send certified copies of the writ, summons and complaint to Sargis at an address in Arizona where the plaintiff believed he resided. On June 20, 1994, the sheriff received the return receipt along with the original, unopened certified letter with the notation: "Return to Sender, No Forward Order on File, Unable to Forward."

Nevertheless, on June 28, 1994, Halloran & Sage filed an appearance on behalf of "all defendants." Three days later, on July 1, 1994, Halloran & Sage filed what it labeled an "amended" appearance, on behalf of the city alone. On the same day, Halloran & Sage filed an answer and special defenses also on behalf of the city alone. On July 5, 1994, the plaintiff moved for a default for failure to appear as to Sargis and Callan. The motion was accompanied by a military affidavit, dated July 5,

---

[5] At oral argument before this court, Sargis conceded that both Ide and Halloran & Sage were his attorneys of record throughout the entire federal action.

1994, indicating that Sargis resided in Phoenix, Arizona, where he was employed as a police officer. On July 7, the trial court denied the motion for default, with a notation suggesting that the plaintiff "move for a [statutory] continuance or for [a] finding of actual notice of out-of-state defendants."

On July 28, 1994, notwithstanding Halloran & Sage's attempt to amend its appearance, the clerk's office mailed to Halloran & Sage and to the plaintiff's attorney a computer printout of the status of appearances, indicating that Halloran & Sage was still the attorney of record for the city, Callan and Sargis.

There was no further activity in the case until October 27, 1994, when the plaintiff moved for a default against Sargis for failure to appear. One day later, the trial court denied the motion with a notation that an appearance for Sargis had been filed by Halloran & Sage on June 28, 1994.[6] On November 9, 1994, more than four months after Halloran & Sage had filed its original appearance, Halloran & Sage formally moved to withdraw its appearance on behalf of Sargis and Callan. The motion to withdraw was filed more than three months after the trial court had sent counsel the computer printout indicating that Halloran & Sage was still Sargis' attorney of record. In its motion to withdraw, Halloran & Sage stated: "In filing an appearance form on June 28, 1994, Halloran & Sage sought to represent only the City of Hartford . . . . Halloran & Sage cannot represent Gregory Sargis and James F. Callan because this would present a conflict of interest."

The Appellate Court in its opinion set forth the following additional relevant facts: "That motion [to withdraw] was accompanied by a certification from an attorney in the law firm [of Halloran & Sage] that Sargis

---

[6] The court order denying the motion for default erroneously noted the date of the appearance as "6/29/94."

had been notified of the pendency of the motion and of his rights pursuant to Practice Book § 77 (d) [now § 3-9 (d)] by a notice mailed to him at 3202 West Bell Road, apartment 2225, Phoenix, Arizona.[7] The trial court, *Langenbach, J.*, granted [over the objection of the plaintiff] the motion to withdraw on November 21, 1994, relying on the documents provided by Halloran & Sage, which included the certification that Sargis had been notified at his address in Arizona. On August 7, 1995, the plaintiff filed a motion for default for failure to appear against Sargis. . . . Sargis was defaulted for failure to appear on August 11, 1995. Judgment was rendered against him in the amount of $1,750,000 on October 30, 1995, after a hearing in damages. Notice of the judgment was sent to Sargis at the Arizona address on November 8, 1995. The notice was returned to the sender as undelivered by the postal service.

"On February 23, 1996, [Ide appeared on behalf of] Sargis [and] filed a motion to open the judgment, which the trial court, *Berger, J.*, granted on April 15, 1996. On May 10, 1996, [Ide on behalf of] Sargis filed a motion to dismiss, alleging that [Sargis] resided in Connecticut at the time of attempted service of the complaint and, therefore, the process was insufficient. On July 22, 1996, the trial court, *Langenbach, J.*, granted the defendant's motion to dismiss."[8] *Pitchell* v. *Hartford*, supra, 46 Conn. App. 802–803.

The plaintiff appealed to the Appellate Court, claiming that the trial court had improperly granted both

---

[7] This was the same Arizona address that the plaintiff had used in the initial attempt to serve the complaint on Sargis that was returned as undeliverable.

[8] "On September 24, 1996, Judge Langenbach issued the following articulation: 'The motion to dismiss was granted because the defendant Sargis was a resident of Connecticut and had been so since March of 1993. Therefore, the attempted service on him in June of 1994 when he had been a Connecticut resident for over one year by leaving a copy of the writ, summons and complaint with the Secretary of the State and by certified mail to an address in Arizona was ineffective.' " *Pitchell* v. *Hartford*, supra, 46 Conn. App. 803.

Sargis' motion to open the default judgment and his motion to dismiss. The majority of the Appellate Court affirmed the trial court's judgment. Id., 808. This certified appeal followed.[9]

It is fundamental that jurisdiction over a person can be obtained by waiver. *United States Trust Co.* v. *Bohart*, 197 Conn. 34, 39, 495 A.2d 1034 (1985) ("[u]nlike subject matter jurisdiction, however, personal jurisdiction may be created through consent or waiver"). In the present case, the plaintiff claims that Halloran & Sage's appearance on behalf of Sargis, followed by a failure to move to dismiss the complaint within thirty days of the filing of that appearance, constituted a waiver of Sargis' right to contest personal jurisdiction over him. Practice Book § 10-30.[10] In contrast, Sargis contends that Halloran & Sage had mistakenly filed the original appearance and, for that reason, the trial court granted its motion to withdraw. Consequently, according to Sargis, Halloran & Sage did not waive his right to claim lack of personal jurisdiction by failing to move to dismiss within thirty days. We agree with the plaintiff.

The issue of whether a court-approved withdrawal of an appearance, based on a claim of mistake, can prevent the waiver of the represented party's right to claim lack of personal jurisdiction as a result of an insufficient service of process when that withdrawal occurs more than thirty days after the original appearance, is a matter of law. "[W]here legal conclusions of the [trial] court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the

[9] Because we limited our certification to the issue of the motion to dismiss, we let stand the trial court's granting of the motion to open the default judgment, thereby vacating the $1,750,000 judgment by default as to Sargis.

[10] See footnote 1 of this opinion for the relevant text of Practice Book § 10-30.

memorandum of decision . . . ." *Pandophe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221, 435 A.2d 24 (1980). Thus, our review of the trial court's ultimate legal conclusion and resulting grant of the motion to dismiss will be de novo.

The certified issue raises two underlying questions: (1) whether Halloran & Sage's appearance was filed with authority; and (2) if so, whether the failure to move to dismiss within thirty days thereafter constituted a waiver of Sargis' right to challenge the court's personal jurisdiction over him. If the appearance was filed with authority, and if Sargis' right to challenge the court's personal jurisdiction over him was waived, the court had valid personal jurisdiction over Sargis that could not be attacked later.

It has long been established that a court cannot acquire jurisdiction over a party as a result of an attorney filing an appearance unless the filing of that appearance is authorized. See, e.g., *Hanzes* v. *Flavio*, 234 Mass. 320, 327, 125 N.E. 612 (1920). In the present case, as the plaintiff argues, the city had statutory authority to retain an attorney to file an appearance for Sargis, whose alleged liability was based on his status as a city employee.[11] Sargis concedes that the city had authority, in its discretion, to appear and defend on behalf of its employees. General Statutes § 7-465 expressly provides in part: "(a) Any town, city or borough . . . shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages . . . . In any such action the municipality and the employee may be represented by the same attorney if the municipality, at the time

---

[11] The plaintiff also argues that the city had common-law authority under the theory of respondeat superior, which creates joint and several liability between an employee and employer. We do not reach this issue because we hold that the city had statutory authority.

such attorney enters his appearance, files a statement with the court, which shall not become part of the pleadings or judgment file, that it will pay any verdict rendered in such action against such employee. . . ." In the present case, Halloran & Sage did not file a statement that the city would pay any verdict against Sargis pursuant to § 7-465. The failure to file such a statement, however, neither deprived Halloran & Sage of the authority to appear nor invalidated its appearance on Sargis' behalf, ab initio. Until the appearance was challenged as unauthorized for failure to file the certificate, or Halloran & Sage sought to withdraw it on the basis of a potential conflict of interest, its legal effect remained as what it purported to be: an appearance on behalf of all the defendants named in it. The filing of the statement does not demonstrate Halloran & Sage's authorization to represent all of the defendants. Instead, it indicates that a potential conflict of interest between the defendants has been resolved. It directly relates to the issue of whether, if a judgment is rendered against Sargis, the city will be required to pay the judgment, an issue we do not reach in this case.

General Statutes § 7-101a also places a financial responsibility on the city to pay for damages, legal fees and costs arising out of the negligence of an employee. Section 7-101a (a) obligates the city to "protect and save harmless any municipal officer . . . or any municipal employee . . . from financial loss and expense, including legal fees and costs, if any, arising out of any claim, demand, suit or judgment by reason of alleged negligence, or for alleged infringement of any person's civil rights, on the part of such officer or such employee while acting in the discharge of his duties." Consequently, notwithstanding Halloran & Sage's belated claims regarding conflict of interest and its failure to

file a statement pursuant to § 7-465 (a), §§ 7-465 and 7-101 (a) at least permit, or authorize, the same attorney to represent a municipality and an employee.[12]

Halloran & Sage's potential conflict of interest does not change our conclusion. Any potential conflict of interest is a matter between the defendants, and can be waived by those parties. In the present case, the statutory authority for Halloran & Sage's multiple defendant appearance contemplates a potential conflict of interest. See General Statutes §§ 7-101a (b) and 7-465. Thus, Halloran & Sage could have represented all three defendants, pursuant to §§ 7-101a or 7-465, as it did in the federal action, or each defendant could have had separate representation. See *Fraser* v. *Henninger*, 173 Conn. 52, 57–58, 376 A.2d 406 (1977). Even if there was a perceived conflict of interest caused by the dual representation of Sargis and the city, the conflict did not destroy the binding effect of Halloran & Sage's appearance with respect to the waiving of service of process. This is true even though Halloran & Sage's motion to withdraw its appearance on behalf of Sargis was based on its argument that it had only intended to represent the city by its June 28, 1994 appearance because to do otherwise would have been a conflict of interest. See *Johnson* v. *Zoning Board of Appeals*, 166 Conn. 102, 107, 347 A.2d 53 (1974) (jurisdiction attaches even if appearance is "inadvertently" filed by attorney who has authority to do so). There is nothing extraordinary about an attorney entering an appearance on behalf of a client and later withdrawing due to a conflict of interest. Accordingly, the existence of a potential conflict of interest between the city and Sargis did not alter the city's authority to file an appearance on behalf

---

[12] The Appellate Court improperly required the plaintiff to establish that Halloran & Sage filed the initial appearance pursuant to either Sargis' authorization or a duty to defend him. *Pitchell* v. *Hartford*, supra, 46 Conn. App. 807.

of Sargis or alter Sargis' ability to raise his right to claim insufficient process.

We are also required to determine whether, under the provisions of the rules of practice, Sargis waived his right to contest the court's jurisdiction by Halloran & Sage's failure to move to dismiss within thirty days. "The rules of statutory construction apply with equal force to Practice Book rules." *Grievance Committee* v. *Trantolo*, 192 Conn. 15, 22, 470 A.2d 228 (1984). "Where the meaning of a statute [or rule] is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. Its unequivocal meaning is not subject to modification by way of construction." (Internal quotation marks omitted.) Id. The plain language of the rules of practice regarding appearances and the right to challenge the court's jurisdiction over the person is unambiguous, thus its clear meaning must be followed. Although we are directed to interpret liberally the rules of practice, that liberal construction applies only to situations in which "a strict adherence to them would work surprise or injustice." Practice Book § 1-8, formerly § 6. We perceive no such surprise or injustice here.

We first note that the filing of an appearance[13] on behalf of a party, in and of itself, does not waive that party's personal jurisdiction claims. Nevertheless, "[a]ny defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance. . . ."[14]

---

[13] Black's Law Dictionary (6th Ed. 1990) generally defines an appearance as: "A coming into court as a party to a suit . . . . The formal proceeding by which a defendant submits himself to the jurisdiction of the court. The voluntary submission to a court's jurisdiction. . . ."

[14] The 1978 revised edition of the Practice Book implicitly abolished special appearances. *Chrysler Credit Corp.* v. *Fairfield Chrysler-Plymouth, Inc.*, 180 Conn. 223, 226–27, 429 A.2d 478 (1980); see also *In re Baby Girl B.*, 224 Conn. 263, 305–306, 618 A.2d 1 (1992) (*Borden, J.*, concurring and

Practice Book § 10-30. The rule specifically and unambiguously provides that any claim of lack of jurisdiction over the *person* as a result of an insufficiency of service of process *is waived* unless it is raised by a motion to dismiss filed within thirty days in the sequence required by Practice Book § 10-6, formerly § 112.[15] Thus, thirty-one days after the filing of an appearance or the failure to adhere to the requisite sequence, a party is deemed to have submitted to the jurisdiction of the court. Any claim of insufficiency of process is waived if not sooner raised.

In the present case, Halloran & Sage was Sargis' attorney of record between June 28 and November 21, 1994, when the trial court granted the motion to withdraw its June 28 appearance on behalf of Sargis. During those 146 days, Halloran & Sage failed to file a motion to dismiss on behalf of Sargis. Thus, it is not disputed that a motion to dismiss was not filed within thirty days of the June 28 appearance. Pursuant to the rules of practice, a waiver of personal jurisdiction defects occurs if a

dissenting). Historically, a party submitted to the jurisdiction of the court and waived any right to claim lack of jurisdiction when the party entered a general appearance. *In re Baby Girl B.*, supra, 305 (*Borden, J.*, concurring and dissenting). Alternatively, a special appearance enabled a party to appear for the sole purpose of challenging the court's jurisdiction. Id.

[15] Practice Book § 10-6 provides: "Pleadings Allowed and Their Order

"The order of pleading shall be as follows:

"(1) The plaintiff's complaint.

"(2) The defendant's motion to dismiss the complaint.

"(3) The defendant's request to revise the complaint.

"(4) The defendant's motion to strike the complaint.

"(5) The defendant's answer (including any special defenses) to the complaint.

"(6) The plaintiff's request to revise the defendant's answer.

"(7) The plaintiff's motion to strike the defendant's answer.

"(8) The plaintiff's reply to any special defenses."

Practice Book § 10-7, formerly § 113, entitled "Waiving Right to Plead," explains how a party waives its right to plead certain motions. Section 10-7 provides: "In all cases, when the judicial authority does not otherwise order, the filing of any pleading provided for by the preceding section will

timely motion to dismiss is not filed. Therefore, despite Sargis' argument that neither he nor Halloran & Sage intended to waive his jurisdictional challenge, we view the inaction of his attorneys of record as an abandonment of his right to make such a claim, which resulted in a waiver of that right.[16]

Furthermore, when an attorney has the authority to enter an appearance on behalf of a defendant, the filing of a general appearance is not modified merely because it was filed in error. *Johnson* v. *Zoning Board of Appeals*, supra, 166 Conn. 110; *Baker* v. *Baker*, 248 Iowa 361, 364–65, 81 N.W.2d 1 (1957) (jurisdiction over defendant cannot be questioned by special appearance after entry of general appearance, even when general appearance was filed due to mistake by counsel). Halloran & Sage's "amended" appearance of July 1, 1994, also had no effect on its original appearance filed on behalf of all three defendants. Once an appearance has been filed, the attorney must follow Practice Book procedures in order to withdraw. Practice Book § 3-9, formerly § 77. Section 3-9 (d) prohibits the withdrawal of an attorney's appearance without permission from the court, unless it falls within a stated exception, none of which applies here.[17] It follows that, once the court has obtained jurisdiction as a result of a waiver, the subsequent withdrawal of counsel does not affect the court's jurisdiction

waive the right to file any pleading which might have been filed in due order and which precedes it in the order of pleading provided in that section."

[16] Furthermore, contrary to Sargis' arguments, Halloran & Sage's actions indicate that it actually believed that service was sufficient. In November, 1994, Halloran & Sage certified to the court that it sent Sargis notice of its motion to withdraw to the same Phoenix address to which the plaintiff had sent a copy of the complaint. Consequently, it appears that the Phoenix address was Sargis' last address known to both the plaintiff and Halloran & Sage. Practice Book § 10-13, formerly § 122, provides in relevant part that service of process may be made by mailing a copy of the pleadings to the "last known address of the attorney or party. . . . Service by mail is complete upon mailing. . . ."

[17] Practice Book § 3-9 provides in relevant part: "Withdrawal of Appearance; Duration of Appearance

over the party. In the present case, Sargis' right to make such a claim was waived thirty-one days after Halloran & Sage's original appearance on June 28, 1994.

Nor are we persuaded by Sargis' argument that, because the plaintiff conceded that Sargis had failed to appear before November, 1994, the plaintiff could not later argue that Sargis appeared on June 28, 1994, through Halloran & Sage. We are not convinced that the plaintiff necessarily made this concession by filing any of his three motions for default for failure to appear.[18] Moreover, even if he had made such a concession, it would not change the status of Halloran & Sage's appearance on behalf of Sargis that was in effect until its motion to withdraw was granted in November, 1994.

Our conclusion is further supported by the fact that the clerk of the court indicated to all parties that Halloran & Sage was representing the defendants, including Sargis, when he sent the computer printout to all parties on July 28, 1994, and that the trial court denied the October 27, 1994 motion for default for failure to appear, based on the June 28 appearance. Therefore, Halloran &

"(a) An attorney or party whose appearance has been filed shall be deemed to have withdrawn such appearance upon failure to file a written objection within ten days after written notice has been given or mailed to such attorney or party that a new appearance has been filed in place of the appearance of such attorney or party in accordance with Section 3-8.

"(b) An attorney may withdraw his or her appearance for a party or parties in any action after the appearance of other counsel representing the same party or parties has been entered. . . .

"(c) All appearances of counsel shall be deemed to have been withdrawn 180 days after the entry of judgment in any action seeking a dissolution of marriage, annulment, or legal separation, provided no appeal shall have been taken. . . .

"(d) Except as provided in subsections (a), (b) and (c), no attorney shall withdraw his or her appearance after it has been entered upon the record of the court without the leave of the court. . . ."

The withdrawal in this case does not fall within the exceptions of subsections (a), (b) or (c).

[18] The plaintiff filed motions for default for failure to appear on July 5, 1994, October 27, 1994, and August 4, 1995.

Sage had notice for more than three months that the court had accepted its original appearance on behalf of all three defendants and gave no effect to its second appearance filed on behalf of the city alone.

In sum, the rules of practice are unambiguous. Its provisions create evenhanded, easy to follow procedures that all litigants must follow. As the plaintiff argues, to allow a party to compromise these well established, unambiguous Practice Book provisions would lead to a case-by-case analysis by the courts, which would lead to uncertainty of application.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for further proceedings according to law.

In this opinion the other justices concurred.