[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] FACTS
On February 16, 2000, the plaintiff FF Screw Products, Inc. (FF) filed a two count complaint against the defendant, Clark Screw Machine Products Co. (Clark). alleging breach of contract and unjust enrichment. FF claims that Clark sold it inferior steel, which resulted in a loss of $188,001.34 from costs incurred in using this steel to manufacture fasteners for its customers and future profits of $221,715.74 as a result of losing one of its customers. FF is a Connecticut corporation with its principal place of business in Southington, Connecticut. Clark is a Pennsylvania corporation with its principal place of business in Blawnox, Pennsylvania. On July 15, 2000, Clark filed a motion to dismiss for lack of personal jurisdiction, which was denied by the court, Shortall, J., on September 6, 2001 on the basis that Clark did have sufficient minimum contacts and its activities did bring it within jurisdiction under Connecticut's long arm statute, General Statutes § 33-929 (f) (2) and (3).
On November 7, 2001, Clark commenced a third party action against, Turret Steel Industries, Inc., (Turret) alleging that Turret may be or is liable for all or part of FF's claims against Clark since Turret supplied Clark with the steel. Clark is seeking damages and indemnification for any judgment that may be rendered against it and in favor of FF.
Turret filed an appearance on December 31, 2001 and filed a motion to dismiss on January 28, 2002, pursuant to Practice Book § 10-31
seeking dismissal due to lack of personal jurisdiction.
 DISCUSSION
"[A]ny defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance." (Internal quotation marks omitted.) Pitchell v. Hartford, CT Page 16009247 Conn. 422, 432, 722 A.2d 797 (1999). "[T]he Superior Court . . . may exercise jurisdiction over a person only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction. . . . Because a lack of personal jurisdiction may be waived by the defendant, the rules of practice require the defendant to challenge that jurisdiction by a motion to dismiss." (Citations omitted; internal quotation marks omitted.) Kim v. Magnotta, 249 Conn. 94, 102,733 A.2d 809 (1999).
"If a challenge to a court's personal jurisdiction is raised by a defendant, either by a foreign corporation or a nonresident individual, the plaintiff must bear the burden of proving the court's jurisdiction." Id., 607. "There should be no presumption of the truth of the plaintiffs allegation of the additional facts necessary to confer jurisdiction.Standard Tallow Corp. v. Jowdy, 190 Conn. 48, 53, 459 A.2d 503, (1983). [T]he burden of proof is on the plaintiff to prove jurisdiction over the person when constructive service is used." Id., 54.
Turret moves to dismiss Clark's third party complaint against it alleging that Clark cannot meet its burden to establish personal jurisdiction over it as a foreign corporation because its contacts do not subject it to personal jurisdiction under Connecticut's long arm statute or under the due process clause of the United States Constitution. Turret has submitted an affidavit from Phillip B. Holmes, the Vice President and Controller of Turret, in support of its argument. Clark responds that the Connecticut long arm statute reaches Turret under § 33-929 (f) (2) and (f) (3). Clark also contends that Turret has sufficient contacts so that the court's exercise of personal jurisdiction would not violate the due process clause. Clark has attached a printout of Turret's internet website to its memorandum. (See Clark's Memorandum, Exhibit 1.)
"When a defendant files a motion to dismiss challenging the court's jurisdiction, a two part inquiry is required. The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) Knipple v. Viking Communications, 236 Conn. 602, 606,674 A.2d 426 (1996).
 I. Jurisdiction Under the State Long Arm Statute
The parties do not dispute that the long arm statute must be examined CT Page 16010 to determine if the court has jurisdiction over Turret. Clark only addresses subsections (f) (2) and (f) (3) of General Statutes § 33-929
as a basis for asserting personal jurisdiction over Turret. General Statutes § 33-929 (f) provides in relevant part: "Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows . . . (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state . . . or (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers. . . ." General Statutes § 33-929
(f).
Clark argues that Connecticut has jurisdiction over Turret pursuant to General Statutes § 33-929 (f) (2). It maintains that Connecticut's long arm statute does not require a causal connection between Turret's activities in Connecticut and Clark's cause of action. The statute only requires Clark to demonstrate that Turret could reasonably have anticipated being haled into court here by some person who had been solicited in Connecticut and that Clark's cause of action is not materially different from an action that might have resulted directly from that solicitation. Turret responds, that where the statute does not require a "causal connection," the plaintiff must establish that the defendant's conduct was "continuous and systematic."
"A foreign corporation may be haled into court in Connecticut only if a plaintiff alleges jurisdictional facts that, if proven, would satisfy one of the provisions of our long arm statute, General Statutes § 33-929
(f)." Pitruzello v. Muro, 70 Conn. App. 309, 311, 798 A.2d 469 (2002). "[I]t is important to describe the general analytic framework within which [§ 33-929 (f)] operates. Unlike [§ 33-929 (e)], this subsection confers jurisdiction over designated causes of action without regard to whether a foreign corporation transacts business in Connecticut and without regard to a causal connection between the plaintiffs cause of action and the defendant's presence in this state. We read this language as requiring inquiry not only into the various elements of the plaintiffs cause of action, spelled out in the various subparts of subsection [(f)], but also into the totality of contacts which the defendant may CT Page 16011 have with the forum." Lombard Bros., Inc. v. General Asset ManagementCo., 190 Conn. 245, 253-54, 460 A.2d 481 (1983).
"The words "arising out of [in the state] . . . must be interpreted in a manner that reconciles the legislative decision to impose some limits on constitutionally permitted jurisdiction with its decision not to require a causal connection between the defendant's solicitation here and the plaintiffs' lawsuit. . . . For purposes of § [33-929 (f) (2)], a plaintiffs cause of action aris[es] . . . out of . . . business solicited in this state if, at the time the defendant engaged in solicitation in Connecticut, it was reasonably foreseeable that, as a result of that solicitation, the defendant could be sued in Connecticut by a solicited person on a cause of action similar to that now being brought by the plaintiffs." (Internal quotation marks omitted.) Thomason v. ChemicalBank, 234 Conn. 281, 296, 661 A.2d 595 (1995).
"Pursuant to our interpretation of the statute, a plaintiff need not show that, because of the acts of solicitation, the defendant was on notice that it might be sued by the plaintiff himself or herself. A plaintiff similarly need not show that the defendant solicited his or her business in Connecticut. A plaintiff need only demonstrate that the defendant could reasonably have anticipated being haled into court here by some person who had been solicited in Connecticut and that the plaintiffs cause of action is not materially different from an action that might have resulted directly from that solicitation." (Emphasis in original.) Id., 296.
A Connecticut case that resembles the circumstances of this case isLombard Bros., Inc. v. General Asset Management Co., supra, 190 Conn. 245. The court in Pitruzello v. Muro, supra, 70 Conn. App. 309, analyzed the case in its decision noting that "the [Lombard] defendant was a securities dealer that did business only in New York. . . . The dealer's contacts with Connecticut were 145 accurate duplicate confirmations sent to this state in response to the plaintiff's transfer of funds to the dealer. . . . In addition, the dealer had dealt with twelve other Connecticut customers, with whom it did $771,000,000 in trades representing less than one percent of the dealer's total business." (Citations omitted.) Pitruzello v. Muro, supra, 70 Conn. App. 319-20. "Lombard held that these facts did not suffice to permit a Connecticut court to exercise personal jurisdiction over the securities dealer. . . . It noted that, "[a]part from these advertisements, there is neither allegation nor evidence that the defendant ever expressly solicited business from the plaintiff . . . or from anyone else.'" (Citation omitted.) Id., 320. CT Page 16012
There is a similar lack of allegation in this case. First of all, Turret is a foreign corporation. Secondly, Clark has shown no evidence that Turret repeatedly solicited business in Connecticut to avail itself of personal jurisdiction. There is no evidence that Turret ever solicited business from any other Connecticut residents. Clark argues that Turret actively solicits its product nationwide via its website and that such activity is sufficient solicitation for purposes of § 33-929
(f) (2). Even though Turret holds out on its website that it serves all of North America, it does not direct its advertising to Connecticut specifically or offer any special service, product, pricing or other advantage to Connecticut residents. Nothing in the website advertisements would have lead Turret to believe it could be haled into court in Connecticut. Clark's mere reliance on the national character of the internet to demonstrate that Turret's internet advertising had the potential to reach Connecticut is unsupported. Clark has not demonstrated that Turret's internet advertising is purposefully directed at Connecticut residents. "There is no factual showing that any Connecticut resident actually accessed the defendant's website." (Citations omitted.)MacMullen v. Villa Roma Country Club, Superior Court, judicial district of New Haven, Docket No. CV 97 0405070 (December 3, 1998, Fracasse, J.) (23 Conn.L.Rptr. 187).
Whether advertising on the internet satisfied the long arm statute has been addressed by the courts in Connecticut. Clark relies on InsetSystems, Inc. v. Instruction Set, Inc., 937 F. Sup. 161, 155 A.L.R.Fed. 745 (D.Conn. 1996) for the proposition that a foreign corporation's advertising via the internet was solicitation of a sufficient repetitive nature to satisfy the "solicitation of business" provision of the Connecticut long arm statute. The district court has since distinguished its ruling in Inset Systems in E-Data Corp. v. Micropatent Corp.,989 F. Sup. 173 (D. Conn. 1997), where the court found that solicitation via the website was not enough to constitute personal jurisdiction. "Unlike in Inset Systems where Connecticut Web users could view defendant's solicitations using plaintiffs trademarked name by typing defendant's Web address, or even merely by viewing defendant's allegedly infringing domain name on a web browser directory, in this case, a Connecticut user must play a more active role in order to view any solicitation by [defendant.] Specifically, the Connecticut user must find defendant's Web address, access it, view and browse the information. . . . Thus, the activity necessary for a Connecticut consumer to be solicited by West Stock on the Internet is distinguished from the more passive type of Web solicitation in Inset Systems." Id., 176. The same level of activity as in E-Data Corp. would be necessary for a Connecticut resident to be solicited by Turret's web page in the present case. Accordingly, Clark has failed to meet its burden of showing CT Page 16013 that Connecticut has personal jurisdiction over Turret pursuant to General Statutes § 33-929 (f) (2).
Clark also argues that Connecticut has jurisdiction over Turret pursuant to § 33-929 (f) (3). It maintains that Turret should have reasonably expected that it would be haled into court by some person who had used or consumed goods it produced, manufactured or distributed with the reasonable expectation that such goods would be used or consumed in Connecticut. Turret responds that there are no facts which demonstrate that it had a reasonable expectation that its product would reach and be used by a customer in Connecticut. It argues, once again, that the continuous and systematic contact with Connecticut is absent.
In Goldstein v. Nutrition Now, Inc., Superior Court, judicial district of Waterbury, Docket No. CV 96 0150429S (August 23, 1999, Sheldon, J.), the court extended the reasonably foreseeable test and the holding ofThomason v. Chemical Bank, supra, 234 Conn. 296, to include causes of action arising out the defendant's production, manufacture or distribution of goods. The court adapted the Thomason court's holding and stated that a plaintiffs "cause of action aris[es] . . . out of [the defendant's] production, manufacture or distribution of goods . . . with the reasonable expectation that such goods are to be used or consumed in this state, if at the time the defendant engaged in such [production, manufacture or distribution of goods]. . ., it was reasonably foreseeable that, as a result of [such production, manufacture or distribution] . . ., the defendant could be sued in Connecticut . . . on a cause of action similar to that now being brought by the plaintiffs." (Internal quotation marks omitted.) Goldstein v. Nutrition Now, Inc., supra, Superior Court, Docket No. CV 96 0150429; see also Loughery v. Commissioner ofCorrections, Superior Court, judicial district of Hartford, Docket No. CV 01 0812161 (July 9, 2002, Hennessey, J).
"[The language of [§ 33-929 (f)] requires] inquiry not only into the various elements of the plaintiffs cause of action, spelled out in the various subparts of subsection [(f)], but also into the totality of contacts which the defendant may have with the forum." Frazer v.McGowan, 198 Conn. 243, 248, 502 A.2d 905 (1986). "Under [§ 33-929
(f)], consistent with the constitutional demands of due process, it is the totality of the defendant's conduct and connection with this state that must be considered, on a case by case basis, to determine whether the defendant could reasonably have anticipated being haled into court here." Id., 249. "If the plaintiffs cause of action alleges conduct falling within one of the four statutorily designated classes, the court must examine the totality of the defendant's contacts with the state of Connecticut to determine whether personal jurisdiction over the defendant CT Page 16014 is proper." Id., 250.
In determining the applicability of § 33-929 (f) (3), this court is aided by the affidavit of Phillip B. Holmes, vice president and controller of Turret, and Turret's answers to the interrogatories. Holmes averred that Turret is a Pennsylvania corporation with its principal place of business in Pennsylvania, that Turret does not solicit business, advertise or regularly make sales in Connecticut. Holmes also averred that the agreement between Turret and Clark was entered into in Pennsylvania, that Turret had no knowledge whatsoever concerning any intentions of Clark to use the steel purchased from Turret to make products, which would be thereafter shipped to customers in Connecticut and that Turret had no expectation that the steel would be used or consumed in Connecticut. Holmes also responded to an interrogatory that Turret is not registered to do business in the state of Connecticut. However, in response to another interrogatory, Turret states that it has produced any invoices, purchase orders and/or work orders in its possession which reflect sales made to customers in Connecticut during 1997, 1998, 1999, 2000 and 2001 in response to Clark's Request for Production of Documents. In its answer to interrogatory number six, which asks Turret to provide a list of approximate annual sales made to Connecticut customers from 1990 to the present and the approximate percentage that Connecticut customers constituted annually for each of the years, Turret provides its total sales and its sales in Connecticut for the years 1997 to 2001.[1]
Turret argues, and this court agrees, that sales to Connecticut customers prior to the year 2001 are irrelevant to the present motion because they predate the commencement of this action. "Whether or not a court has jurisdiction over a party must logically be determined as of the moment when the party is haled into court. See, e.g., MetropolitanLife Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569 (2d Cir.), cert. denied, 117 S.Ct. 508 (1996); Green v. Sha-Na-Na, 637 F. Sup. 591, 595
(D. Conn. 1986) ("It is well established that jurisdiction is to be determined by examining the conduct of the defendants as of the time of service of the complaint."); Connecticut Aircraft Corp. v. Smith,574 F. Sup. 626, 630 (D.Conn. 1983)."Goldstein v. Nutrition Now, Inc., supra, Superior Court, Docket No. CV 96 0150429. This case was commenced against Turret by Clark's Motion to Cite in Turret and Clark's Complaint against Turret of October 23, 2001. The court, therefore, will only look at the sales for the year 2001, the year when Turret was cited in to the action.
Turret has admitted that its sales to Connecticut were approximately CT Page 16015 $169,000 or .60% of its $27,000,000 in total sales. These were direct sales to Connecticut customers. This contact is sufficient to assert jurisdiction over Turret under the state long arm statute. See, Simeonev. Federal Press Co., 40 Conn. Sup. 173, 175-76, 485 A.2d 587 (1984).
Turret claims that it had no reasonable expectation that the steel it provided to Clark in Pennsylvania would be used in certain products which would be sold to customers in Connecticut. This is not the standard that Clark must prove. Instead, Clark must prove, and has, that such an action should not be materially different from the kind of action that reasonably would be brought as a result of use or consumption of Turret's products in Connecticut. Thomason v. Chemical Bank, supra, 234 Conn. 296. It was reasonably foreseeable that, as a result of the production, manufacture or distribution of steel, Turret could be sued in Connecticut on a cause of action similar to that now being brought by Clark.
On the basis of these statements and the court's adoption of the Thomason holding in Goldstein v. Nutrition Now, Inc., supra, Superior Court, Docket No. CV 96 0150429, it is this court's conclusion that Turret had sufficient contacts with Connecticut and that General Statutes § 33-929 (f) (3) does reach Turret. Clark alleged that it purchased steel from Turret and provides a basis for this court to exercise jurisdiction over Turret. This does not end the matter however. Having determined that jurisdiction may be exercised pursuant to General Statutes § 33-929 (f), the court must next determine whether the assertion of personal jurisdiction over Turret would comport with constitutional requirements of procedural due process. Knipple v. VikingCommunications. Ltd., supra, 236 Conn. 609.
II. Jurisdiction Under the Constitutional Standard of Due Process
Turret's alternative argument is that even if Clark establishes statutory jurisdiction under General Statutes § 33-929 (f), it has not purposely availed itself of the privilege of conducting activities in Connecticut to the extent necessary to satisfy the minimum contacts requirement of the due process standard. Turret maintains that any contacts it had with Connecticut were too attenuated and, therefore, insufficient to establish purposeful availment. Clark argues in opposition that the exercise of personal jurisdiction under the Connecticut long arm statute over Turret comports with the constitutional standard of due process. Clark further maintains that it is foreseeable that and reasonable for a Connecticut court to exercise jurisdiction over Turret.
"A state court may exercise personal jurisdiction over a nonresident CT Page 16016 defendant only so long as there exist "minimum contacts' between the defendant and the forum state." World-Wide Volkswagen Corp. v. Woodson,444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The contacts must be such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v.Washington, 326 U.S. 310, 326, 66 S.Ct. 154, 90 L.Ed.2d 95 (1945).
"The United States Supreme Court has held that the test to be applied in considering the reach of personal jurisdiction is whether (1) the nonresident party has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state, and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice. AsahiMetal Industry Co. v. Superior Court, 480 U.S. 102, 111-12,107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). . . ." Panganiban v. Panganiban,54 Conn. App. 634, 639, 736 A.2d 190, cert. denied, 251 Conn. 920,742 A.2d 359 (1999).
"The due process test for personal jurisdiction has two related components: the "minimum contacts' inquiry and the "reasonableness' inquiry. The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction. . . . The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice — that is, whether it is reasonable under the circumstances of the particular case." (Internal quotation marks omitted.) Id. 639-40; see alsoInternational Shoe Co. v. Washington, supra, 326 U.S. 316. "The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness. "[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" United States Trust Co. v.Bohart, 197 Conn. 34, 41, 495 A.2d 1034 (1985), quoting World-WideVolkswagen Corp. v. Woodson, supra, 444 U.S. 287. "[E]ven when the cause of action does not arise out of or relate to the foreign corporation's, activities in the forum State, due process is not offended by a State's subjecting the corporation . . . to its in personam jurisdiction if the defendant has had continuous and systematic general business contacts with the state." (Internal quotation marks omitted.) Knipple v. VikingCommunications, supra, 236 Conn. 606 n. 6.
"The specific facts of each case necessarily determine the outcome of a minimum contacts analysis." United States Trust Co. v. Bohart, supra, CT Page 16017197 Conn. 42. "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462,475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).
This court finds that there is no basis for exercising jurisdiction over Turret as it could not have reasonably expected to be haled into a Connecticut court. See Thomason v. Chemical Bank, supra, 234 Conn. 291. Turret's connections with Connecticut are not enough to constitute personal jurisdiction. "The defendant's contacts with Connecticut . . . have not been so "continuous and systematic' as to give this court general jurisdiction over it under the prevailing constitutional test."Goldstein v. Nutrition Now, Inc., supra, Superior Court, Docket No. CV 96 0150429. Turret has no offices, employees, sales representatives or sales territories in Connecticut. It does not own any interest in real property, hold any bank accounts, or have any warehouses, equipment or telephone numbers in Connecticut. Even though Clark argues that Turret's products reached customers in Connecticut, these sales amounted to less than one percent of Turret's total sales to customers nationwide. Turret, to reiterate, has never been licensed to do business in this state or purposefully directed its advertisements via the website at Connecticut specifically. "Defendant is not subject to personal jurisdiction . . . because its contacts with Connecticut are insufficient." Id.
"While [the defendant] would be subject to personal jurisdiction if that were determined solely by the language of General Statutes § [33-929 (f)], the court finds that subjecting [it] to jurisdiction on the basis of the de minimus contacts with Connecticut present in this case would violate due process. The plaintiff, therefore, [has] not met [its] burden of proving the court's jurisdiction over [the defendant]."Gershberg v. Kean, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV 99 0174316 (July 17, 2001, Adams, J) (30 Conn.L.Rptr. 100); see also Knipple v. Viking Communications. Ltd.,
supra, 236 Conn. 607. Turret's motion to dismiss Clark's complaint is therefore granted.
 ___________________ Berger, J.